**FRANCOSTEEL CORPORATION,
Unimetal–Normandy, Plaintiffs–
Appellants,**

v.

**M/V CHARM, her engines, boilers, tackle,
furniture, apparel, etc., in rem, P/R Tiki,
Mortensen & Lange, Defendants–Appellees.**

No. 93–8957.

United States Court of Appeals,
Eleventh Circuit.

April 22, 1994.

Edwin D. Robb, Jr., Bouhan, Williams & Levy, Walter Charlton Hartridge, II, Carlton Edward Joyce, Savannah, GA, for plaintiffs-appellants.

Robert Strudwick Glenn, Jr., Hunter, Maclean, Exley & Dunn, Savannah, GA, Mark C. Flavin, Haight, Gardner, Poor & Havens, Michael A. Bilavsky, James H. Hohenstein, New York City, for defendants-appellees.

Before HATCHETT and DUBINA, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

DUBINA, Circuit Judge:

Appellants-plaintiffs Francosteel Corporation ("Francosteel") and Unimetal–Normandie ("Unimetal") appeal the district court's judgment of dismissal of their lawsuit for lack of *in personam* jurisdiction over appellees-defendants M/V Charm ("the Charm"), P/R Tiki ("Tiki"), and Mortensen & Lange ("Mortensen").

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

## I. *FACTUAL BACKGROUND*

Francosteel is a corporation organized under the laws of New York with its principal place of business in New York City. Unimetal is a French corporation with its principal place of business in Caen, France. Francosteel purchased a quantity of steel wire rods from Unimetal to be delivered to Savannah, Georgia and Jacksonville, Florida. In order to transport the shipment of rods, Unimetal subchartered a cargo vessel, the Charm, from the vessel's charterer, General Shipping & Chartering, Rotterdam ("GSC"). GSC had itself chartered the vessel from its owner Tiki, a Danish shipping partnership based in Holte, Denmark, pursuant to a charter agreement. The charter agreement between GSC and Tiki anticipated that the Charm would transport steel rods from Caen, France to Savannah and Jacksonville. Mortensen, a Danish partnership established under the laws of Denmark and with its principal place of business in Holte, Denmark, was the Charm's manager.

In November 1992, the Charm arrived in port in Caen, France to receive the cargo of rods. On November 19, 1992, four bills of lading were issued, with two listing Savannah as the discharge point and two listing Jacksonville. The bills list Unimetal as the shipper and Francosteel as the consignee, and were signed by the "Master or Agent" of the Charm. On November 20, 1992, the cargo of rods was loaded aboard the Charm and the vessel set sail. On November 24, 1992, the Charm sank, and both vessel and cargo were a total loss.

## II. *PROCEDURAL HISTORY*

Francosteel and Unimetal brought the present admiralty and maritime action under the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300–1315 (1988), against Tiki and Mortensen, *in personam*, and against the Charm, *in rem*, alleging that (1) the Charm was unseaworthy, (2) Tiki and the Charm breached a contract of carriage and maintained an unseaworthy vessel, and (3) Mortensen, as the vessel's manager, was negligent in failing to maintain a seaworthy vessel. Tiki and Mortensen filed a motion to dismiss under Fed.R.Civ.P. 12(b)(2). Specifically, they argued that the court lacked personal jurisdiction over them and in the alternative that the action should not proceed on the basis of *forum non conveniens*. Francosteel and Unimetal filed a motion for partial summary judgment on the issue of personal jurisdiction. Finding that it lacked both general and specific personal jurisdiction over Tiki and Mortensen and *in rem* jurisdiction over the Charm, the district court dismissed the action pursuant to Fed.R.Civ.P. 12(b)(6).

Francosteel and Unimetal raise only one issue on appeal: whether the district court erred in dismissing the action for lack of specific personal jurisdiction over Tiki and Mortensen.

## III. *STANDARD OF REVIEW*

This court has authority to review *de novo* the district court's dismissal for lack of *in personam* jurisdiction. *Vermeulen v. Renault, U.S.A., Inc.,* 965 F.2d 1014, 1016 (11th Cir.1992), *modified and superseded by,* 985 F.2d 1534 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993). Where, as here, the district court did not conduct an evidentiary hearing on the jurisdictional issue, the plaintiffs-appellants need only make out a *prima facie* case of jurisdiction. *Id.* A *prima facie* case is established if the plaintiffs-appellants present sufficient evidence to defeat a motion for directed verdict. *Id.* at 1016–17. In assessing a motion for directed verdict,

[d]istrict and appellate courts should consider all of the evidence in the light most favorable to the nonmoving party and with all reasonable inferences drawn in favor of the nonmover. If the facts and inferences are so strong that the court believes that reasonable persons in the exercise of impartial judgment could not arrive at a contrary verdict, the district court properly grants a directed verdict or j.n.o.v. If, however, the evidence is such that "reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions," it is improper for the district court to grant a directed verdict or j.n.o.v.

*MacPherson v. University of Montevallo,* 922 F.2d 766, 770 (11th Cir.1991) (citations omitted).

## IV. *ANALYSIS*

■ Georgia's long arm statute confers *in personam* jurisdiction to the maximum extent allowed by the due process clause of the federal Constitution. *Vermeulen,* 965 F.2d at 1021–22; *Complete Concepts, Ltd. v. General Handbag Corp.,* 880 F.2d 382, 388 (11th Cir.1989); *First United Bank of Mississippi v. First National Bank of Atlanta,* 255 Ga. 505, 340 S.E.2d 597, 599 (1986). The district court held that it could not constitutionally exercise either general or specific *in personam* jurisdiction over Tiki and Mortensen. In this appeal, Francosteel and Unimetal challenge the district court's holding as to specific jurisdiction only. Thus, the question presented is whether the exercise of specific *in personam* jurisdiction over Tiki and Mortensen complies with the due process requirements of the federal Constitution.

■ *In personam* jurisdiction complies with due process when (1) the nonresident defendant has purposefully established minimum contacts with the forum state, and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Because the district court found that minimum contacts were lacking, it did not address the fairness prong of the due process test.

■ To constitute minimum contacts for purposes of specific jurisdiction,

the defendant's contacts with the applicable forum must satisfy three criteria. First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve

"some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum ...., thus invoking the benefits and protections of its laws." Third, the defendant's contacts with the forum must be "such that [the defendant] should reasonably anticipate being haled into court there."

*Vermeulen,* 985 F.2d at 1546. The availability of specific jurisdiction depends on the relationship among the defendant, the forum, and the litigation. *Borg–Warner Acceptance Corp. v. Lovett & Tharpe, Inc.,* 786 F.2d 1055, 1057 (11th Cir.1986).

■ In this case, the only possible contact with Georgia from which this cause of action could arise is a contract of carriage between Unimetal and Tiki that allegedly resulted when the Master of the Charm signed the bills of lading.[1] For purposes of our analysis, we will assume without deciding that the bills of lading created binding contracts between Unimetal and Tiki for delivery of the cargo in Georgia. The district court held that even if there were such a contract it would be insufficient to justify *in personam* jurisdiction in this case.

The Supreme Court has said the following regarding the use of a contract as a basis for *in personam* jurisdiction:

At the outset, we note a continued division among lower courts respecting whether and to what extent a contract can constitute a "contact" for purposes of due process analysis. If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot. The Court long ago rejected the notion that personal jurisdiction might turn on "mechanical" tests or on "conceptualistic ... theories of the place of contracting or of performance." Instead, we have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future conse-

1. Tiki and Mortensen have one other contact with Georgia, which is unrelated to the present cause of action; prior to the events giving rise to

this case, the Charm made one other call to a Georgia port.

628

quences which themselves are the real object of the business transaction." It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985) (citations and footnotes omitted). "[W]ith respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other [s]tate for the consequences of their activities." *Id.* at 473, 105 S.Ct. at 2182 (citations omitted).

Assuming there is a contract in this case, Tiki and Mortensen's only possible connection with Georgia is that the contract called for delivery of the cargo in Georgia. None of the events giving rise to the cause of action took place in Georgia. None of the parties is a Georgia resident. Unimetal and Francosteel are residents of France and New York, respectively. Tiki and Mortensen are residents of Denmark. The contract was negotiated and executed outside of Georgia. The Charm sank in the Atlantic, never even reaching Georgia.

In addition, Tiki's conduct does not rise to the level of purposeful availment of the privileges of doing business in Georgia or the protections of Georgia's laws. It appears that there were no direct negotiations or other dealings between Tiki or Mortensen and Unimetal. Rather, Unimetal negotiated with the charterer GSC. If Tiki is bound by a contract at all, it is only because its agent signed a bill of lading with no direct involvement by Tiki itself. Moreover, to the extent there were negotiations, it was Unimetal, not Tiki or Mortensen that initiated them. Furthermore, Unimetal, in its capacity as subcharterer of the Charm, not Tiki, actually controlled the Charm's movements and directed it to sail toward Georgia. Finally, Tiki and Mortensen's agreement to deliver the cargo to Georgia was an isolated and sporadic contact with Georgia, not part of a regular practice of delivering goods to Georgia. Other than one prior call to a Georgia port, Tiki and Mortensen have had absolutely no physical contacts with Georgia whatsoever. Under these circumstances, Tiki's alleged contract with Unimetal does not constitute the type of "reaching out to create continuing relationships" or "purposeful availment of the privilege of conducting business in Georgia" necessary to justify *in personam* jurisdiction in Georgia.

Unimetal and Francosteel cite a plethora of state court cases in which *in personam* jurisdiction was found to be constitutional where nonresident defendants entered contracts to be performed in the forum state. However, all but two of these cases were decided prior to *Burger King.* Moreover, each of them is distinguishable from the facts of this case in that the nonresident defendant had done something to reach out to the forum state in addition to merely entering a contract that contemplated performance in the forum state.

The district court relied heavily on *United Rope Distributors, Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532 (7th Cir.1991), a case that we find to be directly on point. In that case, a vessel bound for a port in Wisconsin sank at sea. The purchaser of the vessel's cargo, which was a Minnesota resident, filed suit in Wisconsin against the vessel's owner and manager. The owner was contractually bound to the purchaser as a result of signatures on the bills of lading. The contract to deliver goods to Wisconsin was the owner's sole contact with Wisconsin. The owner did not initiate contract negotiations in Wisconsin or appear in Wisconsin for contract negotiations. Under these circumstances, the court held that the due process clause would not allow the State of Wisconsin to exercise personal jurisdiction over the owner. *Id.* at 534.

## V. CONCLUSION

■ The present case cannot be meaningfully distinguished from *United Rope.* Moreover, we agree with the Seventh Circuit's analysis and find it to be consistent with the Supreme Court's analysis in *Burger*

*King.* Accordingly, we hold that the contracts to deliver cargo to a Georgia port do not constitute sufficient minimum contacts with Georgia to justify the exercise of specific *in personam* jurisdiction over Tiki and Mortensen in Georgia.[2] We affirm the judgment of the district court dismissing the cause of action for lack of personal jurisdiction.[3]

AFFIRMED.

---

2. Because we hold that minimum contacts are lacking, we, like the district court, will not consider whether the exercise of personal jurisdiction in this case would offend traditional notions of fair play and substantial justice.

3. Although the district court clearly intended to dismiss this action for lack of personal jurisdiction, it actually dismissed under Fed.R.Civ.P. 12(b)(6). While this is an error in that the case should have been dismissed under Fed.R.Civ.P. 12(b)(2), the error is harmless.