In re David Lanier and Katherine Laney CHEW, Debtors.

James H. LEWIS, Plaintiff,

v.

David Lanier CHEW, Defendant.

Bankruptcy No. 94–03937–BGC–7.
Adv. No. 94–00335.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

May 10, 1995.

Robert L. Shields, for Debtors.

James H. Haggerty, for plaintiff.

James Henderson, Trustee.

## MEMORANDUM OPINION ON DEBTOR'S MOTION FOR DIRECTED VERDICT

BENJAMIN COHEN, Bankruptcy Judge.

This matter came before the Court on the *Complaint Under Section 523(a)(2)* to determine the dischargeability of a debt owing to the Plaintiff by David Lanier Chew.[1] A trial was held on February 15, 1995, at which the Debtor, Mr. David Lanier Chew; Mr. Robert L. Shields, attorney for the Debtor; the Plaintiff, Mr. James H. Lewis; and Mr.

---

1. The original complaint named both David Lanier Chew and Katherine Laney Chew as defendants. Based on an agreement of the parties, this Court entered an order on February 10, 1995, dismissing Mrs. Chew as a defendant.

James A. Haggerty, attorney for the Plaintiff, appeared. At the close of the Plaintiff's case the Debtor made an oral Motion for Directed Verdict.[2] The Debtor's motion was taken under advisement and was submitted on the testimony of the Plaintiff; the out-of-turn testimony of Mr. Gary Kitchen, an employee of Oxford Furniture Galleries, Inc., one of the corporations associated with the Debtor; numerous exhibits admitted without objection; and on the arguments and statements of fact submitted by the parties in the prosecution of the Debtor's Motion for Summary Judgment and Motion for Directed Verdict.

## I. PROCEDURE

Prior to the trial on this matter the Court considered a Motion for Summary Judgment filed by the Debtor. Immediately prior to trial the parties argued their positions on that motion. Based on the Plaintiff's representations that the Plaintiff was at that time prepared to testify to facts which would create genuine issues as to material facts, the Court denied the Debtor's motion. After the trial of the Plaintiff's case the Debtor, in effect, renewed his summary judgment motion in the form of a Motion for Directed Verdict contending that the Plaintiff not only did not prove that there were any genuine issues as to material facts, but that the Plaintiff also failed to prove that the debt complained of should be excepted from the Debtor's discharge.

## II. FINDINGS OF FACT

The Court derives the relevant facts that bear on the disposition of this matter from the Debtor's Motion for Directed Verdict, the testimony of the Plaintiff, the testimony of Mr. Kitchen, the exhibits and the Debtor's Brief in support of Motion for Summary Judgment.[3]

The Plaintiff is in the real estate business and operates as Lewis Investment Company. On February 4, 1987, Riverchase Furniture Galleries, Inc. entered a lease agreement with Bonnie G. Chew, II, the Debtor's father, for space at a shopping center in Hoover, Alabama. Pla. Ex. 8. When the shopping center was sold to the Plaintiff, the Riverchase Furniture Galleries, Inc. lease was assigned to the Plaintiff by the estate of Bonnie G. Chew, II. On October 8, 1991, Riverchase Furniture Galleries, Inc. assigned its interest in the lease to Peck & Hills Furniture Galleries, Inc. Def. Ex. 2. Oxford Furniture Galleries, Inc. guaranteed this obligation. Def. Ex. 3. The Debtor was the president and chief executive officer of Riverchase Furniture Galleries, Inc., Peck & Hills Furniture Galleries, Inc. and Oxford Furniture Galleries, Inc.

The Plaintiff testified that the Debtor called him in March of 1992 to discuss financial problems that were occurring under the lease. During that conversation the Debtor explained that the lease rent was no longer affordable. At that time the Debtor proposed a temporary lowering of the rent. The Plaintiff further testified that the Debtor told him that if the rent were lowered, the Plaintiff "would be made whole" when conditions improved. On March 13, 1992, the Debtor, as president of Peck & Hills Antique Mall, wrote the Plaintiff and proposed a payment of 75 percent of revenue in lieu of the lease amount. Pla. Ex. 9. On March 30, 1992, the Plaintiff, as landlord, and Riverchase Furniture Galleries, Inc., through its president, the Debtor, entered a "First Amendment to Lease Agreement" embodying the changed rent settlement. Def. Ex. 1. On July 21,

---

**2.** At least two courts have considered whether motion for "directed verdict" is proper terminology. One notes that it is, *In re Trost,* 164 B.R. 740, 749 n. 9 (Bankr.W.D.Mich.1994) (with a non-jury trial), the other notes that "motion for judgment as a matter of law" is more appropriate, *U.S. Anchor Mfg., Inc. v. Rule Industries, Inc.,* 7 F.3d 986, 992 n. 9 (11th Cir.1993) (with a jury trial) and *Tate v. Government Employees Insurance Co.,* 997 F.2d 1433, 1434 n. 1 (11th Cir.1993) (with a jury trial), although both agree that the latter is always acceptable. The Debtor's intent in this case is clear however regardless of the phrase used.

**3.** There is a related adversary proceeding pending in this case. The findings of fact in this proceeding will not be considered at and will not be admissible at a trial of the related pending proceeding unless the parties agree that the facts are admissible or if the facts are admissible for some purpose other than to establish the truth of the matters alleged.

1992, the Plaintiff wrote the Debtor and advised him that Riverchase Furniture Galleries, Inc. was in default under the lease. Pla. Ex. 10.[4] In that letter the Plaintiff addressed the Debtor as president of Riverchase Furniture Galleries, Inc.

The Plaintiff contends that the Debtor promised to pay the corporate lease debts. The Plaintiff argues that this promise was an intentional and fraudulent misrepresentation. In this alleged misrepresentation, the Plaintiff includes his understanding that the Debtor promised to pay those debts from a portion of a potential lawsuit settlement, that the Debtor personally guaranteed the lease agreement entered on March 30, 1992, and that the Debtor operated his corporations with an intent to deceive the corporate creditors.

On cross examination the Plaintiff testified that he had no evidence to offer to prove any of the usual indicia of the use of corporate shells to mislead creditors. The Plaintiff testified that he had no evidence to prove that any corporation paid personal expenses of the Debtor, that the Debtor paid any expenses of any corporation, that the Debtor appropriated corporate assets for his personal use or that personal and corporate assets were intermingled.

The Plaintiff further testified that when he requested a pledge of the lawsuit settlement, that the Debtor advised him that those funds were already pledged.

The Plaintiff did not offer any evidence that the Debtor had personally guaranteed the corporate debts.

### III. THE PLAINTIFF'S CONTENTIONS

The Plaintiff contends that this Court should find that either the Debtor personally guaranteed the lease obligations for the related three corporations or that the Debtor's actions were such that the Court should look behind the corporate frames and find the Debtor personally responsible for the corporate lease debt. In his complaint the Plaintiff contends that:

1. The Debtor guaranteed the lease obligation in his capacity as president of Oxford Furniture Galleries, Inc.;

2. The Debtor operated his corporations to mislead creditors;

3. After being advised that the lease was in default, the Debtor represented that partial payments would be made;

4. The Debtor misrepresented that rental payments would be made;

5. That the Plaintiff relied on the misrepresentations;

6. The Plaintiff's reliance was justified and that the Plaintiff suffered damages as a result of that reliance.

In his Brief in Support of Response in Opposition to Motion for Summary Judgment the Plaintiff questions whether the Debtor may be held to a personal guarantee of the corporate lease agreement, whether the Debtor committed fraud, made false representations or acted under false pretenses so as to except the Plaintiff's debt from the Debtor's discharge under 11 U.S.C. § 523(a)(2)(A) or whether the Debtor's alleged actions caused willful and malicious injury to the Plaintiff as contemplated by 11 U.S.C. § 523(a)(6).[5]

As his argument relates to the Debtor's personal guarantee of the lease agreement and the Debtor's operation of his corporations, the Plaintiff contends, "Mr. Chew's past business history shows a deliberate attempt to frustrate creditors by weaving a complicated deceiving web of overlapping corporate, partnership, sole proprietorships

---

**4.** Although Riverchase Furniture Galleries, Inc., assigned its interest in the lease to Peck & Hills Furniture Galleries, Inc., the parties continued to consider "Riverchase" as the tenant. The amended lease agreement was signed by the Plaintiff as landlord and by the Debtor as president of Riverchase Furniture Galleries, Inc., and was guaranteed by the Debtor as president of Oxford Furniture Galleries, Inc.

**5.** The Plaintiff did not state which specific subsection of section 523(a)(2) applies to this case, but from the allegations in the complaint, the Court finds that only subsection (A) applies. Without further evidence, this Court is unable to find that the signing of the lease in question was "use of a statement in writing" under subsection (B) of section 523(a)(2). Subsection (C) obviously does not apply as this case does not involve consumer debts.

and personal entities." Brief in Support of Response in Opposition to Motion for Summary Judgment at 2.

As his argument relates to the Plaintiff's reliance on the Debtor's alleged representation that there would be payment of funds from a lawsuit settlement, the Plaintiff contends that he relied on statements of the Debtor to the effect that a portion of a settlement from a pending lawsuit in which the Debtor was the plaintiff would be paid by the Debtor to the Plaintiff to cure defaults in the lease. In this regard the Plaintiff argued in his brief in opposition to the Debtor's motion for summary judgment that, "The debtor pledged the proceeds from a non-related settlement as collateral for the promise to bring the arrearage up to date." Brief in Support of Response in Opposition to Motion for Summary Judgment at 3.

## IV. EXCEPTIONS TO DISCHARGE:

### A. FALSE PRETENSES, FALSE REPRESENTATION OR ACTUAL FRAUD

### B. WILLFUL AND MALICIOUS INJURY

■ To prevail under section 523(a)(2)(A) the Plaintiff must prove that, "(1) the debtor made a false representation with the intent to deceive the creditor, (2) the creditor relied on the representation, (3) that his reliance was reasonably founded, and (4) that the creditor sustained loss as a result of the representation." *In re Laurent,* 991 F.2d 672, 676 (11th Cir.1993).[6]

To prevail under section 523(a)(6) the Plaintiff must prove, "an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another." *In re Ikner,* 883 F.2d 986, 991 (11th Cir.1989). "As to the 'malicious' prong ... that term as used in section 523 [is defined] as 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-

will.'" *Id.* (quoting *In re Latch,* 820 F.2d 1163, 1166 n. 4 (11th Cir.1987)) (parenthetical added).

The burden of proof in section 523 matters is by a "preponderance of the evidence." *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

In light of the above facts and for the reasons expressed below, this Court finds that the Plaintiff failed to meet the burden of proof as to section 523, that the Debtor's Motion for Directed Verdict is due to be granted and that the debt owed to the Plaintiff by the Debtor is due to be discharged.

## V. MOTIONS FOR SUMMARY JUDGMENT AND DIRECTED VERDICT

The instructions of the Court of Appeals for the Eleventh Circuit on the proper method of consideration of motions for summary judgment and motions for directed verdicts are clear. The one that applies in this case is:

> In assessing a motion for directed verdict, [d]istrict and appellate courts should consider all of the evidence in the light most favorable to the nonmoving party and with all reasonable inferences drawn in favor of the nonmover. If the facts and inferences are so strong that the court believes that reasonable persons in the exercise of impartial judgment could not arrive at a contrary verdict, the district court properly grants a directed verdict or j.n.o.v. If, however, the evidence is such that "reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions," it is improper for the district court to grant a directed verdict or j.n.o.v.

*Francosteel Corporation v. M/V Charm,* 19 F.3d 624, 626–627 (11th Cir.1994) (quoting *MacPherson v. University of Montevallo,* 922 F.2d 766, 770 (11th Cir.1991)) (citations omitted in original quote).

---

**6.** The misrepresentation necessary to support a claim of false pretenses, false representation or actual fraud is an intentional representation. The intentional nature of such actions may be proved by a "reckless disregard for the truth" which the Court of Appeals for the Eleventh circuit has held to be the equivalent of intent for purposes of section 523(a)(2). *See, Birmingham Trust National Bank v. Case,* 755 F.2d 1474 (11th Cir.1985); *In re Booth,* 174 B.R. 619 (Bankr. N.D.Ala.1994).

## VI.  CONCLUSIONS OF LAW

The Plaintiff has not only failed to prove that the Debtor committed a section 523 offense, but by his own testimony he demonstrates that the Debtor neither pledged to the Plaintiff funds from the settlement of a pending lawsuit, nor personally guaranteed the corporate debts nor operated his corporations in a manner inconsistent with that required by law.  The Plaintiff's evidence is devoid of any facts which refute the Debtor's Motion for Summary Judgment and Motion for Directed Verdict.  The Plaintiff failed to prove not only that the Debtor made a false representation with the intent to deceive the Plaintiff but that the Debtor deceived the Plaintiff at any time, whether intentionally or not.  The Plaintiff did not offer any evidence of damages nor did he offer any evidence of willful or malicious injury.[7]  What the Plaintiff did prove was that the Debtor at all times represented himself as an officer or representative of each of the corporations involved, that the Debtor did not personally guarantee the debts of the corporation and that the Debtor did not pledge any portion of a lawsuit settlement to secure a corporate debt.  *See,* Pla. Exs. 8–11, Def. Exs. 1–3, and the testimony of the Plaintiff.

■  As to the settlement proceeds, the Plaintiff specifically testified that he asked the Debtor for a pledge of the possible settlement proceeds from the Debtor's pending lawsuit but the Debtor told him that all of those proceeds had been paid.  When asked why he relied on the possibility of receiving the settlement proceeds after he knew that all of the proceeds had been assigned, the Plaintiff testified that he understood and expected that the lawsuit was larger than it turned out to be.

■  As to the Debtor's personal guarantee of the corporate lease debt and the question of the Debtor's operation of the corporate entities, all business documents offered by the Plaintiff, or admitted into evidence without objection, show the Debtor's actions as president of a corporation or on behalf of a corporation.  Pla. Exs. 8–11 and Def. Exs. 1–3.  Other than the Plaintiff's testimony that he considered the Debtor's actions to be a personal guarantee of the corporate debts, there is no evidence supporting the Plaintiff's contentions.  If the Plaintiff is to prevail on this issue, this Court must find that the Debtor was the alter ego of the corporations.  The Plaintiff's own testimony eliminates this possibility.  He testified that he had no evidence to offer on this point.

■  Even if the Debtor had personally guaranteed the corporate obligation, the Plaintiff has failed to demonstrate an intent to deceive or that any willful or malicious injury occurred.  The Plaintiff's conclusions from the facts simply do not support a finding that the debt owed to the Plaintiff should be excepted from the Debtor's discharge.  The debt owed the Plaintiff is a corporate debt.  The Plaintiff failed to prove that this Debtor is responsible for that debt.

### A.  Motion for Directed Verdict

■  The Plaintiff did not establish a *prima facie* case.  The Plaintiff did not present evidence sufficient to defeat a motion for a directed verdict.  The facts and inferences in this case are so strong that this Court believes, under the standard required in this circuit, that "reasonable persons in the exercise of impartial judgment could not arrive at a contrary verdict.  . . ."  *Francosteel Corporation v. M/V Charm,* 19 F.3d 624, 626 (11th Cir.1994).  At the close of the Plaintiff's case, the Court asked counsel for the Plaintiff whether the Plaintiff intended to call the Debtor as a witness.  The answer was no.  The Debtor then made his Motion for a Directed Verdict.  At that time the Court was faced with the question of whether to deny the motion and require the Debtor to respond to the Plaintiff's case, or to take the matter under advisement.  If the Court had chosen the former, the Debtor, by testifying, would have in effect been forced to assist the Plaintiff in proving his case.  Because the Plaintiff did not establish a *prima facie* case

---

7.  This Court does not find that such facts may not exist.  Because of the related complaint pending against the Debtor in this Court, the finding that certain facts do not exist will have no bearing on the Court's consideration of whether such facts exist in any other proceeding or whether the Plaintiff in another case will be able to prove such facts.

with his initial presentation, this Court does not believe that the Debtor should be required to assist in the cure of that default.

### B. Motion for Summary Judgment

 If this Court were to reconsider the Debtor's Motion for Summary Judgment in light of the facts presented at trial, the Court would grant that motion.[8] Because the Plaintiff would bear the burden of proof at trial, the Debtor was not required, "to support ... [his] motion with affidavits or other similar material negating the opponent's claim in order to discharge ... [his] initial responsibility. Instead, ... [he need only show] that there is an absence of evidence to support the non-moving party's case." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–1116 (11th Cir.1993) (quoting *U.S. v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991)) (citations, footnote and internal quotations omitted from original quote) (parentheticals added). The Debtor met this burden by demonstrating an absence of evidence on the issue. Once that burden was met, the Plaintiff was required, where there was this demonstration of a lack of evidence, as opposed to putting on evidence affirmatively negating material facts, to respond in one of two ways. Judge R. Lanier Anderson, III, writing for the circuit court explains:

> First he or she [the non-movant] must show that the record in fact contains supporting evidence, sufficient to withstand a *directed verdict motion,* which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence. Second, he or she may come forward with additional evidence sufficient to withstand a *directed verdict motion* at trial on the alleged evidence.

*Fitzpatrick* at 1116–1117 (citations omitted) (parentheticals added) (emphasis added). The Plaintiff failed to satisfy either criterion.

**8.** The opinion written by Judge R. Lanier Anderson, III, in *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112 (11th Cir.1993) contains an excellent detailed explanation of the steps a trial court should follow in considering a motion for summary judgment.

### VII. CONCLUSION

For the reasons stated above, this Court finds that the Debtor's Motion for Directed Verdict is due to be granted.