**GERLING GLOBAL REINSURANCE CORP. OF AMERICA, et al.,**
Plaintiffs,

v.

**Bill NELSON, etc., Defendant.**

**No. 4:99CV444–RH.**

United States District Court,
N.D. Florida,
Tallahassee Division.

Nov. 11, 2000.

John K. Aurell, Ausley & McMullen, Tallahassee, FL. David J. Linesch, Linesch Firm PA, Palm Harbor, FL. Dina Daskalakis, Frederick Reif, James Donovan, Wilson Elser Moskowitz etc., New York City, NY, for Gerling Global Reinsurance Corp. of America.

Martin Stephen Turner, Broad & Cassel, Tallahassee, FL, Daniel Sears Dearing, Attorney General's Office, Dept. of Legal Affairs, Tallahassee, FL, Donald Allen Dowdell, Dept. of Ins., Div. of Legal Services, Tallahassee, FL, Daniel Y. Sumner, Dept. of Ins., State of Florida, Tallahassee, FL, for Bill Nelson.

Stephen A Ecenia, Rutledge Ecenia Underwood etc., Tallahassee, FL, for Germany, Federal Republic of Germany, Amicus.

David O Buchholz, U.S. Dept. of Justice, Federal Programs Branch, Washington, DC, for U.S., Amicus.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

HINKLE, District Judge.

The Holocaust was perhaps the low point of human history. Its effects, financial and otherwise, persist. One of the continuing effects is that some Holocaust victims and their families have not received proceeds they were owed under their insurance policies; amounts due may have been confiscated by the Third Reich or otherwise left unpaid. Diplomatic efforts are underway between the governments of the United States and the Federal Republic of Germany to address these and other such matters.

This case presents the issue of whether the State of Florida has jurisdiction to compel production of information regarding the non-payment of amounts owed under insurance policies issued in Germany to German Holocaust victims by German insurers having no contacts with the State of Florida. Because constitutional principles apply to matters of great moment as well as small, and because good motives do not expand a state's jurisdictional reach, I hold that the State of Florida does not have such jurisdiction.

## I

The Florida "Holocaust Victims Insurance Act," § 626.9543, Fla. Stat. (1999), has as its legislatively declared purpose that "potential and actual insurance claims of Holocaust victims and their heirs and beneficiaries be expeditiously identified and properly paid and that Holocaust victims and their families receive appropriate assistance in the filing and payment of their rightful claims." § 626.9543(2), Fla. Stat. (1999).

Toward that end, the Act includes a number of provisions purporting to affect the rights of German insurers and their German insureds under policies issued in Germany between 1920 and 1945.[1] Some

---

1. The Act does not limit its effects to German insurers or policies. It applies to any insurers that issued policies to Holocaust victims.

Holocaust victims of course hailed from a number of countries in addition to Germany. They presumably obtained coverage from in-

of the Act's provisions apply by their terms only to insurers now doing business in the State of Florida, some apply also to any corporate affiliate of such an insurer even when the affiliate has no contact with the State of Florida, and some of the Act's provisions apply by their terms to any insurer anywhere in the world without regard to whether the insurer or any affiliate has any connection with the State of Florida.

For example, the Act requires insurers doing business in Florida to pay claims established under "a reasonable, not unduly restrictive, standard of proof," § 626.9543(5)(b), Fla. Stat. (1999), and to provide extensive information to the Florida Department of Insurance regarding policies issued to Holocaust victims by the insurers themselves or by any "parent, subsidiary, or affiliated company." § 626.9543(3)(d) & (7), Fla. Stat. (1999). By rule, the Commissioner has interpreted the Act to require any insurer doing business in Florida to pay not only its own claims but also to pay claims against any parent, subsidiary or corporate affiliate. Rule 4–137.010(6), Fla. Admin. Code.

More broadly, the Act abrogates the German statute of limitations, creates a new ten-year statute of limitations going forward, and abrogates any defense of laches. § 626.9543(6), Fla. Stat. (1999). The Act does not, by its terms, limit these provisions to insureds or insurers having any connection whatsoever to the State of Florida or, for that matter, the United States.

Finally, the Act gives insureds the right to treble damages, costs and attorney's fees, including, apparently, as a remedy for any non-payment of claims by any insurer doing business in Florida or by any parent, subsidiary or corporate affiliate of any such insurer. § 626.9543(10), Fla. Stat. (1999).[2]

## II

Plaintiffs are six related insurers who do business in Florida. As of 1945, none had ever issued a single insurance policy to anyone; only one of the six plaintiffs was even in existence. None of the unpaid Holocaust-era policies that prompted adoption of the Florida "Holocaust Victims Insurance Act" were issued by plaintiffs.

Defendant Bill Nelson, in his capacity as Florida Insurance Commissioner, has issued subpoenas to the plaintiffs demanding that they produce records of any Holocaust-era policies issued not only by the plaintiffs themselves but by any German affiliates. Plaintiffs are affiliates of two German insurers, Gerling–Konzern Lebensversicherungs–AG ("GKL") and Gerling–Konzern Allgemeine Versicherungs–AG ("GKA"), which issued Holocaust-era policies in Germany, presumably including at least some to Holocaust victims.

Plaintiffs have brought this action challenging the Commissioner's constitutional authority to compel them to comply with the subpoenas to the extent they seek records of the German affiliates. In response, the Commissioner makes no claim that the policies for which he seeks infor-

surers from Germany and elsewhere. The insurers at issue in the case at bar—affiliates of plaintiffs—are German. For convenience, I refer in this opinion to German insurers and German Holocaust victims; the same analysis applies to insurers and victims from other countries.

2. The Act makes treble damages, costs and attorney's fees available remedies for any violation of the Act. § 626.9543(10), Fla. Stat. (1999). By its terms, the Act itself requires payment of claims only by insurers doing business in Florida, § 626.9543(5), Fla. Stat.

(1999); any failure to pay such claims thus would be a violation of the Act for which treble damages, costs and attorney's fees would be available remedies. By rule, the Commissioner has interpreted the Act to require any insurer doing business in Florida to pay not only its own claims but also claims against any parent, subsidiary or corporate affiliate. Rule 4–137.010(6), Fla. Admin. Code. When the Act is so construed, treble damages, costs and attorney's fees become available remedies for non-payment of claims against any insurer that does business in Florida and also against any affiliated insurer.

mation were issued in Florida, were issued to Florida citizens, or had any connection whatsoever to the State of Florida. The Commissioner makes no claim that the German affiliates do business in Florida, have ever done business in Florida, or have any contacts whatsoever with the State of Florida, other than their relationship with the plaintiffs.

Plaintiffs have moved for summary judgment. The Commissioner has moved to dismiss or alternatively for summary judgment. I grant the plaintiffs' motion and direct the entry of judgment in their favor.[3]

## III

■ It has long been established that the Due Process Clause of the Fourteenth Amendment limits the jurisdictional reach of state courts. Thus state courts have jurisdiction only over parties having sufficient minimum contacts with the state. *See, e.g., World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The many cases applying this principle recognize that our constitutional structure places limits on the ability of a state to reach beyond its borders to parties not legitimately subject to the state's authority.

■ The jurisdictional limitations mandated by the Due Process Clause are applicable not only to a state's judiciary but also to a state's executive and legislative branches. There is nothing in the language of the Due Process Clause that suggests otherwise, and nothing in the underlying constitutional structure that suggests that the extra-territorial jurisdiction of a state's executive or legislative branches should exceed that of the judiciary. A

**3.** I reject the Commissioner's assertion that plaintiffs cannot raise their federal constitutional claims in federal court. This is an action seeking injunctive relief against the Commissioner in his official capacity. The longstanding doctrine of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), squarely authorizes this action. The Commis-

state's three branches of government are all subject to the same federal constitutional structure and to the same Due Process Clause; parties subject to a state's constitutional jurisdiction—judicial, legislative or executive—are only those with sufficient minimum contacts with the state.

The United States Court of Appeals for the Eleventh Circuit recently reconfirmed this analysis. In *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County,* 221 F.3d 1211 (11th Cir.2000), the court said:

A state's *legislative jurisdiction* is circumscribed by the Due Process Clause: "There must be at least some minimal contact between a State and the regulated subject before it can, consistently with the requirements of due process, exercise legislative jurisdiction." *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 1737 n. 2, 26 L.Ed.2d 252 (1970) (Harlan, J., dissenting); *accord Adventure Communications Inc. v. Kentucky Registry of Election Finance,* 191 F.3d 429, 435–36 (4th Cir.1999). *The inquiry into whether sufficient legislative jurisdiction exists is similar to that explored in determining sufficient minimum contacts for the purposes of assessing whether a court can exercise personal jurisdiction consistent with due process, or whether a court can apply a state's own law under choice-of-law analysis to a case consistent with due process. See Adventure Communications,* 191 F.3d at 436 (noting a substantial overlap in analysis); *Quill Corp. v. North Dakota,* 504 U.S. 298, 112 S.Ct. 1904, 1909, 119 L.Ed.2d 91 (1992) (stating that due process "requires some definite link, some minimum connection, between state and the person, property or transaction it seeks to tax").

sioner's apparent assertion that that doctrine does not apply to him, or to cases involving a state's regulation of the business of insurance, is plainly wrong. *See, e.g., Barnett Bank, N.A. v. Nelson,* 517 U.S. 25, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996) (enforcing federal law in federal action against same Florida insurance commissioner).

*American Charities,* 221 F.3d at 1216 (underlining added; footnote omitted).

In sum, beyond any reasonable argument, the Florida Holocaust Victims Insurance Act is subject to review under the jurisdictional principles of the Due Process Clause and may be enforced only to the extent consistent with those principles.

## IV

■ Applying the Due Process Clause's jurisdictional principles to these facts does not present a difficult issue. The insurance contracts at issue were entered in Germany between German parties under German law. They addressed German events. Any breach of the contracts occurred in Germany. The parties to the contracts had no connection with Florida. The events governed by the contracts had no connection with Florida. The grounds for exercising jurisdiction over these parties or these events in Florida are exactly none.

Many cases recognize a state's lack of jurisdiction over such extra-territorial contracts. *See, e.g., Home Ins. Co. v. Dick,* 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930) (holding that a Texas statute could not be applied to invalidate an insurance policy that had been issued in Mexico, to a Mexican citizen, that was to be performed in Mexico); *Francosteel Corp. v. M/V Charm,* 19 F.3d 624 (11th Cir.1994) (holding there was no jurisdiction in Georgia in an action on a contract entered outside Georgia by parties from outside Georgia where the only Georgia contact was that the contract called for the delivery of cargo in Georgia).[4] These and other such cases leave no doubt about the absence of jurisdiction here.[5]

■ Three unavailing arguments ostensibly in favor of jurisdiction do, however, deserve mention. First, it undoubtedly is true that some Holocaust victims or their families now live in Florida, and, although the record does not so indicate, some such Florida residents may have claims against German insurers (perhaps even including plaintiffs' German affiliates) arising under policies that went unpaid as a result of the Holocaust. This does not, however, establish jurisdiction in Florida. The law is clear that the movement into a state of a party to a contract entered elsewhere does not standing alone establish jurisdiction over claims arising under that contract.[6]

---

**4.** In addition, in *State Board of Ins. v. Todd Shipyards Corp.,* 370 U.S. 451, 82 S.Ct. 1380, 8 L.Ed.2d 620 (1962), the Supreme Court reconfirmed prior holdings that a state lacks jurisdiction to tax insurance contracts entered outside the state. In doing so, the Court noted Congress's recognition of this principle in enacting the McCarran–Ferguson Act. The earlier cases cited in *Todd Shipyards* included *Allgeyer v. Louisiana,* 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 (1897), *St. Louis Cotton Compress Co. v. Arkansas,* 260 U.S. 346, 43 S.Ct. 125, 67 L.Ed. 297 (1922), and *Connecticut General Life Ins. Co. v. Johnson,* 303 U.S. 77, 58 S.Ct. 436, 82 L.Ed. 673 (1938).

**5.** Indeed, the Commissioner apparently has conceded that no Florida court would have personal jurisdiction over plaintiffs' German affiliates in a case arising under the German insurance contracts now at issue. *See* Transcript of Summary Judgment Hearing (document 38) at 56.

**6.** *See, e.g., John Hancock Mutual Life Ins. Co. v. Yates,* 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106 (1936) (holding that application of Georgia law to dispute arising under life insurance policy issued by Massachusetts insurer to New York resident violated Due Process Clause where only Georgia contact was that beneficiary moved there), cited with approval in *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 310–11, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981); *see also World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (holding consumer's unilateral act of taking product to forum state insufficient to subject manufacturer to jurisdiction there). Indeed, even when one of the parties to a contract is a citizen of the state at issue at the time when the contract is entered, the state does not, for that reason alone, obtain jurisdiction to adjudicate disputes arising under the contract. *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478–79, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (recognizing that even entry into contract with citizen of state does not necessarily subject party to jurisdiction in state); *Francosteel Corp. v. M/V Charm,* 19 F.3d 624, 627–28 (11th Cir.1994) (same).

This is consistent with the principle that, in order to be subjected to a state's jurisdiction, a party must itself have minimum contacts in or "purposely avail itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *see also Francosteel Corp. v. M/V Charm,* 19 F.3d 624 (11th Cir.1994).

▮ Second, plaintiffs do business in Florida and clearly are subject to jurisdiction here, at least with respect to matters relating to their Florida business. But as is uncontested, plaintiffs did not issue any Holocaust-era policies; it is not *plaintiffs'* transactions that the Commissioner is investigating. The transactions at issue were instead entered solely by German corporations of which plaintiffs are subsidiaries.[7] The law is settled that a subsidiary's activities in a state do not, without more, subject its parent to jurisdiction there.[8] Thus the German parents—and their German transactions—are not subject to the jurisdiction of the State of Florida merely because the subsidiaries do business here.[9]

Third, it is true, as the Commissioner notes, that parties to lawsuits within a court's jurisdiction have sometimes been required to produce documents in the possession of a corporate affiliate.[10] A court's ability to reach documents in the affiliate's possession may apply even when the affiliate itself is not otherwise subject to the court's jurisdiction. The Commissioner asserts that the subpoenas he has issued to the plaintiffs are merely a special application of the same jurisdictional principle.

The short answer is that the parties over which the Commissioner has jurisdiction—the plaintiffs—had nothing to do with the transactions the Commissioner is investigating. When a court compels pro-

**7.** The precise relationship between plaintiffs and the German insurers who issued Holocaust-era policies is not as direct as parent-subsidiary; there are intervening corporations in the corporate structures. Still, the Commissioner says the plaintiffs are subsidiaries of the German corporations, and for purposes of this opinion I accept that characterization. Plaintiffs and the German corporations are clearly affiliates within the meaning of the Holocaust Victims Recovery Act.

**8.** *See, e.g., Consolidated Development Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1293 (11th Cir. 2000) ("It is well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other"), *citing Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 337, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *Portera v. Winn Dixie, of Montgomery, Inc.,* 996 F.Supp. 1418 (M.D.Ala.1998).

**9.** It is true that in the course of regulating Florida insurers, the Commissioner can and does properly consider events occurring elsewhere. Thus, for example, if an insurer that does business in Florida commits fraud in another state or country, the Commissioner may properly consider whether that renders the insurer unfit to engage in the business of insurance in Florida. There has been no assertion, however, that any plaintiff had anything to do with any Holocaust-era policies or

with any failure to pay claims under any such policies. Commendably, the Commissioner has made no effort to justify the Holocaust Victims Insurance Act or his actions thereunder simply as a means of determining whether plaintiffs themselves or their officers are fit to engage in the business of insurance in Florida. Rather, the Commissioner has acknowledged, as the Act's statement of purpose makes clear, that the ultimate goal is to bring about payment of amounts due to Holocaust victims and their families. *See* Transcript of Summary Judgment Hearing (document 38) at 43 & 48 (asserting that core of Act is facilitating access of Florida Holocaust victims to information that would allow them to perfect claims). And the Commissioner has said he seeks information regarding amounts due to *Florida* residents only, not regarding amounts owed to victims still in Germany or elsewhere, *see id.* at 33, thus making clear that the goal is not simply to address the current fitness of corporate officers (who presumably would be equally unfit whether they failed to pay valid claims in Germany, Florida or elsewhere) but, as the statute expressly states, to facilitate the payment of claims.

**10.** *See, e.g., Alimenta, Inc. v. Anheuser–Busch Companies, Inc.,* 99 F.R.D. 309 (N.D.Ga. 1983); *In re Uranium Antitrust Litigation,* 480 F.Supp. 1138 (D.C.Ill.1979); *but see Gerling Int'l Ins. Co. v. Commissioner,* 839 F.2d 131 (3d Cir.1988).

duction of documents in the possession of a party's corporate affiliate, the court already has undertaken lawful jurisdiction over the underlying controversy; the court has jurisdiction to address, and will address, the substantive dispute, and seeks only to reach information relevant to the dispute the court will resolve. Thus the request for information is collateral to, and dependent upon, the court's jurisdiction of the parties and the subject matter.

In the case at bar, in contrast, the Commissioner is not addressing any dispute involving the plaintiffs themselves, nor does he have lawful jurisdiction over the underlying German transactions. The Commissioner's request for information in the possession of the German affiliates thus is not an attempt to address a dispute involving parties within his jurisdiction; it is instead an attempt to create jurisdiction that would not otherwise exist. The Commissioner cannot bootstrap his way to jurisdiction in this manner.

In sum, the jurisdiction of the State of Florida does not extend to the German parties and German transactions that are at issue in this case.[11]

### *Conclusion*

If this case involved anything other than the Holocaust—that is, if it arose from 55–year–old policies issued by foreign insurers in a foreign country to foreign nationals insuring foreign events that went unpaid for any other reason—the proper resolution would be obvious. The State of Florida has no jurisdiction over such matters, and no reasonable argument could be made to the contrary. But the Holocaust was extraordinary. If extraordinary events could properly be held to render constitutional principles inapplicable, then the Holocaust would be first on the list of events qualifying for that spe-

cial treatment. There is not, however, any such constitutional exemption for events extraordinary or otherwise. Because the efforts of the State of Florida to reach transactions entered in Germany between Germany parties having no connection with Florida are beyond the state's jurisdiction,

IT IS ORDERED:

1. Plaintiffs' motion for summary judgment (document 22) is GRANTED.

2. The clerk shall enter judgment stating, "Judgment is entered in favor of plaintiffs against defendant Bill Nelson in his official capacity as Commissioner of Insurance of the State of Florida. Defendant is enjoined from taking any action against plaintiffs as a result of their failure to provide information or evidence to defendant relating to Holocaust-era policies issued by insurers other than plaintiffs (whether or not such insurers were or are affiliates of plaintiffs) outside of the State of Florida to insureds who were, at the time of issuance of the policies, not Florida citizens or residents."

2. Defendant's motion to dismiss or for summary judgment (document 73) is DENIED.

---

**11.** This ruling makes it unnecessary to address plaintiffs' other challenges to the subpoenas at issue. Nor need I address the Commissioner's assertion that his efforts are consistent, not inconsistent, with the efforts of the United States government to secure pay-

ment of the Holocaust-era claims at issue. The Commissioner makes no claim that the United States has affirmatively authorized his efforts or otherwise ceded him jurisdiction he would not otherwise have.