[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-16824
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 2, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 07-61284-CV-JIC


BLUEWATER TRADING LLC,
a Delaware Limited Liability Company,
a.k.a. Blue Water Trading LLC,

                                        Plaintiff-Appellant

                versus

FOUNTAINE PAJOT, S.A.,

                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____
(July 2, 2009)

Before DUBINA, Chief Judge, TJOFLAT and COX, Circuit Judges.

PER CURIAM:

## I. BACKGROUND

Fountaine Pajot, S.A. ("Fountaine") is a French vessel manufacturer. In late 2005, Michael Kaye, a resident of St. John, U.S. Virgin Islands, signed a contract to purchase a new 37' Fountaine Pajot Maryland catamaran power trawler from Willmar USA, Inc., ("Willmar"), a yacht dealer based in Broward County, Florida. During presale negotiations, Kaye requested a copy of Fountaine's written warranty on the boat. Willmar told Kaye that it did not have a copy of the warranty but that "both WILLMAR and FOUNTAINE fully back the vessels they sell." (R.2-57 ¶ 21.) The purchase contract was subsequently executed in the U.S. Virgin Islands. Before the yacht was delivered, Kaye formed Bluewater Trading LLC ("Bluewater"), a Delaware limited liability company, and transferred his interest in the purchase contract to Bluewater.

In January 2006, the vessel was delivered to Bluewater in the British Virgin Islands. Within weeks of that delivery, Bluewater discovered numerous manufacturing defects in the vessel and demanded from Willmar and Fountaine a copy of the written warranty and execution of warranty repairs.

When the demanded warranty repairs were not performed in a satisfactory manner, Bluewater sued Willmar and Fountaine in the United States District Court for the Southern District of Florida. Bluewater's claims against Fountaine allege

violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§2310(d), 2302(b)(1)(A), and 16 CFR 702.3, and violation of the Florida Deceptive and Unfair Trade Practice Act.[1] (R.2-57.) Fountaine's General Manager was served with process while he was in Miami, Florida, attending the Miami International Boat Show.

Fountaine moved to dismiss Bluewater's claims on the grounds that the court lacked personal jurisdiction over Fountaine and that the forum was inappropriate. After the parties engaged in extensive discovery and submitted evidence regarding Fountaine's contacts in the United States, the district court granted Fountaine's motion, holding that Fountaine was not subject to personal jurisdiction in the Southern District of Florida.

## II. ISSUES ON APPEAL

Bluewater appeals the dismissal, arguing that personal jurisdiction over Fountaine exists pursuant to the Florida long-arm statute or, alternatively, Federal Rule of Civil Procedure 4(k)(2). Fountaine defends the dismissal, arguing that personal jurisdiction cannot be asserted over Fountaine and that, even if the district court erred in finding no personal jurisdiction, the forum selection clause in the warranty would operate to require dismissal.

---

[1]These are the only claims at issue in this appeal. Bluewater obtained a judgment against Willmar, and that judgment is not challenged in this appeal.

## III.  STANDARDS OF REVIEW

This court reviews de novo the district court's dismissal for lack of in personam jurisdiction. *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 626 (11th Cir. 1994) (citation omitted).

## IV.  DISCUSSION

Bluewater argues that personal jurisdiction can be asserted over Fountaine pursuant to the Florida long-arm statute at §48.193(1)(a), (g), and (2).  Those sections of the statute state:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> > a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> >
> > . . .
> >
> > (g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
>
> . . .
>
> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or

otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat.§ 48.193(1)(a), (g), and (2).

In considering whether the Florida long-arm statute authorized the court to assert personal jurisdiction over Fountaine, the district court reviewed the evidence of Fountaine's contacts with the state and concluded that those contacts could not give rise to jurisdiction under the statute. The court found that Fountaine had contracts with warranty service providers in Florida, made a few payments to those providers and Willmar to cover warranty services, paid for a booth at the Miami International Boat Show annually, and sent a representative to attend that show and meet with a Willmar representative once a year. In addition, Fountaine sent emails and marketing materials to Willmar and listed Willmar as its dealer in advertisements in international boating publications and on a website.

The court determined that general jurisdiction could not be asserted over Fountaine because the limited contacts Fountaine had with Florida could not be described as "substantial and not isolated activity within [Florida]." (R.2-101 at 6 (quoting Fla. Stat. § 48.193(2) (2008)).) We agree. This is not a case like *Richard Bertram & Co. v. Am. Marine, Ltd.*, 258 So. 2d 335 (Fla. 3d DCA 1972), cited by Bluewater, where there was a dealer agreement signed in Florida and the foreign

manufacturer provided substantial sales support and exercised significant control over its dealer in Florida. Here, the evidence was that Fountaine did not directly sell vessels in Florida, did not exercise control over Willmar in its sales or warranty service, and did not have a contract with Willmar. We do not accept Bluewater's invitation to impute Willmar's contacts with Florida to Fountaine.

We also agree with the district court that specific personal jurisdiction cannot be asserted over Fountaine under the Florida statute. First, Fountaine's contacts did not rise to the level of "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state" as required by Fla. Stat. § 48.193(1)(a). Thus, Bluewater's claim could not arise out of Fountaine's operation of a business within Florida, as required by Fla. Stat. § 48.193(1)(a). Neither did it arise out of Fountaine's breach of a contract "by failing to perform acts required by the contract to be performed in this state," as required to assert jurisdiction under Fla. Stat. § 48.193(1)(g).

Finally, we agree that Federal Rule of Civil Procedure 4(k)(2) does not provide a basis for assertion of personal jurisdiction over Fountaine. As stated above, Fountaine's contacts with Florida are limited. And, even when considered in conjunction with Fountaine's other contacts with the United States (attendance at the

6

Annapolis Boat Show[2]), they are insufficient for the assertion of personal jurisdiction to comport with due process.

Finding no personal jurisdiction, we need not address Fountaine's forum selection clause argument.

## V.  CONCLUSION

For the foregoing reasons, we affirm the judgment.

AFFIRMED.

---

[2]The district court addressed Bluewater's assertion that Fountaine had additional contacts with the United States by virtue of selling the vessel to Bluewater in the U.S. Virgin Islands by concluding, based on undisputed evidence, that: (1) Fountaine was not a party to the purchase agreement, and (2) delivery of the vessel was made in the British Virgin Islands.