Mrs. Jeanette **HARRIS** and Marvin
E. Harris, Plaintiffs,

v.

**NORTH AMERICAN ROCKWELL COR-
PORATION**, and one or more of the
corporate subsidiaries of North Amer-
ican Rockwell corporation, Defendants
and Third-Party Plaintiffs,

v.

**BOCK MACHINE COMPANY**, Third-
Party Defendant.

**Civ. A. No. 17165.**

United States District Court,
N. D. Georgia,
Atlanta Division.

March 4, 1974.

Smith, Cohen, Ringel, Kohler, Martin
& Lowe, Atlanta, Ga., for plaintiffs.

Lokey & Bowden, Atlanta, Ga., for
defendants and third party plaintiffs.

Jones, Bird & Howell, Atlanta, Ga.,
for third-party defendant.

ORDER

EDENFIELD, Chief Judge.

On September 18, 1972, the main ac-
tion was initiated by plaintiffs Jeanette
and Marvin Harris to recover of the de-
fendants North American Rockwell Cor-
poration and its subsidiaries (hereinaf-
ter collectively referred to as "North
American") damages totalling $1,050,000.
The alleged accident giving rise to plain-
tiffs' action occurred on September 22,
1970, while plaintiff Jeanette Harris
was operating a Lawson High Speed

Drill for her employer, Write Right Manufacturing Company, a division of Union Camp Corporation. As alleged in paragraph 1 of the complaint, " . . . Because of the negligence of defendant North American Rockwell Corporation and/or one or more of its subsidiaries in the manufacture of said 'Lawson High Speed Drill' without provision for safety devices, . . . Mrs. Jeanette Harris underwent the nearly intolerable experience of having her scalp literally pulled from her head by said 'Lawson High Speed Drill.' "

On September 14, 1973, approximately three years after the alleged accident and one year after the main action was instituted, North American sought and obtained leave to file a third-party complaint against Bock Machine Company (hereinafter referred to as "Bock"). The third-party complaint alleges that the Lawson High Speed Drill was manufactured by Bock and sold to the Lawson Division of Michle-Goss-Dexter, Inc., a subsidiary of North American Rockwell Corporation, in September 1958. Subsequently the drill was sold by the Lawson Division to Write Right Manufacturing Company, plaintiff's employer.

North American alleges that if it is liable to plaintiff, then North American would be entitled to a recovery over against Bock. The affidavit of counsel presented to the court in connection with North American's motion to bring in a third-party defendant specifies North American's legal theories and recites that the third-party action is based upon claims of indemnity and/or contribution.

The third-party complaint was served upon Bock pursuant to the Georgia Long-Arm Statute (Ga.Code Ann. § 24–113.1), and pursuant to Rule 12 of the Federal Rules of Civil Procedure, Bock now moves to dismiss the third-party complaint on the following grounds: (1) lack of jurisdiction, (2) insufficient service of process, and (3) failure to state a claim upon which relief may be granted.

*Lack of Jurisdiction*

As recognized in the third-party complaint, Bock was at all times relevant hereto an Ohio corporation, which did not have a place of business or any agent located within the State of Georgia. Consequently, any jurisdiction over Bock must be founded upon the provision of the Georgia Long-Arm Statute (Ga. Code Ann. § 24–113.1), which provides in relevant part:

"A court of this State may exercise personal jurisdiction over any nonresident, or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he:

"(a) Transacts any business within this State; or

"(b) Commits a tortious act or omission within this State, except as to a cause of action for defamation of character arising from the act; or

"(c) Commits a tortious injury in this State caused by an act or omission outside this State, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State. . . ."

As recognized in the decisions dealing with long-arm statutes, jurisdiction can be exercised only where certain minimal contacts with the forum state are present. The United States Supreme Court concisely stated this requirement in Hanson v. Denckla, 357 U. S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), as follows:

"However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." At 251, 78 S.Ct. at 1238.

Citing International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 (1945), the Supreme Court went on to note,

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." At 253, 78 S.Ct. at 1239.

Here it does not appear that Bock had any direct contact with the State of Georgia. Under an agreement reached by the parties in 1946, Lawson was constituted as the exclusive distributor in the United States for one of Bock's drilling machines. The agreement was apparently a "requirements" contract in that Bock agreed to exert its best efforts to produce as many of the machines as Lawson could sell. Throughout the term of the agreement the drill was to be referred to as a "Lawson Drill." Delivery of the machines by Bock was complete upon delivery F.O.B. some form of transportation in Cincinnati, Ohio, the location of Bock's factory. Thus under the agreement, Bock's only duty was to produce the machines for sale and delivery to Lawson in Cincinnati, Ohio.

■■ Apparently some 27 of these machines were sold by Lawson to Georgia customers during the period of 1950–1970. However, the number of Lawson drills sold to Georgia customers is clearly not determinative of whether this court can exercise jurisdiction over Bock. The only appropriate question for jurisdictional purposes is whether, on the record, it appears Bock committed some act by which it purposefully

availed itself of the privileges and protections of Georgia laws. Hanson v. Denckla, *supra.* On the basis of the pleadings, the affidavits and exhibits submitted by the parties the court is convinced that Bock simply is not within the jurisdiction of this court. The agreement between Bock and the Lawson Division was not entered into within Georgia. The agreement itself stipulates that it is to be construed under the laws of Ohio. There is nothing in the record to indicate that Bock was ever qualified to transact business within Georgia, sell its products in Georgia, or to citizens of Georgia. Nor does it appear that Bock placed agents in Georgia, received orders from citizens of the State of Georgia, or made a shipment of its goods to Georgia on its own account. From all that appears on this record, the only place that Bock carried on its business was Cincinnati, Ohio.

■ This court held in Marival, Inc. v. Planes, Inc., 302 F.Supp. 201 (1969), that the Georgia long-arm statute is coterminus with the due process clause. Clearly due process would not be served by compelling Bock to defend in this jurisdiction on the present state of the facts. Bock was not transacting business in Georgia within the meaning of Ga.Code Ann. § 24–113.1(a) or engaged in the type of conduct or earning "substantial" revenue from the consumption of its goods within the state under Ga. Code Ann. § 24–113.1(c). North American's Reliance upon J. C. Penney Co. v. Malouf Co., 230 Ga. 140, 196 S.E.2d 145 (1973), Ga.Code Ann. § 24–113.1(b), and Coe & Payne Co. v. Wood-Mosaic Corp., 230 Ga. 58, 195 S. E.2d 399 (1973), is misplaced. In *Malouf* there were several compelling circumstances which warranted the court's holding that the defendant was "transacting business" within the state for purposes of the long-arm statute.[1] In *Wood-Mosaic*, the occurrence giving rise to the cause of action happened

---

1. In *Malouf, supra*, the court found controlling the fact that Malouf was selling its goods directly to J. C. Penney department stores in

Georgia and that the parties had entered into a warranty-indemnity contract. These circumstances are not present in the instant case.

prior to the effective date (July 1, 1970) of the amended long-arm statute. The court applied Ga.Code Ann. § 24–113.-1(b) to a situation now covered by subsection (c) of the long-arm statute. The court merely held that § 24–113.1(b), which provides that jurisdiction may lie over a nonresident who commits a tortious act within the state, can be used within the perimeters of due process as a jurisdictional basis where the nonresident does or fails to do an act outside of the state which results in injury within the state. This situation now falls under subsection (c) in the amended long-arm statute and for jurisdiction to lie under it the nonresident tortfeasor must engage in a regular course of business or other conduct, or derive substantial revenue from goods used or consumed in the state. Since none of these factors is apparent in the case at bar, Bock's motion for dismissal for lack of jurisdiction must be and hereby is granted.

Bock's motions for dismissal based upon insufficient service of process and the failure to state a claim are Dismissed as Moot.

It is so ordered.