**MAXWELL CHASE TECHNOLOGIES, L.L.C., a Georgia limited liability company, Plaintiff,**

v.

**KMB PRODUCE, INC., a Texas corporation, Eico Designs, Inc., an Alabama corporation, and Craig Sanders, an individual, Defendants,**

v.

**Maxwell Chase Technologies, L.L.C., a Georgia limited liability company, and William M. Brander, an individual, Counterclaim and Third Party Defendants.**

**Civil Action No. 1:99–CV–0916–JTC.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 7, 1999.

Stephen Robert Risley, J. Scott Culpepper, Jennifer M. Gruber, Thomas Kayden Horstemeyer & Risley, Atlanta, GA, for plaintiff.

Harold Stephen Harris, Jr., Frank Garrett Smith, III, David Michael Maxwell, Scott Austin Elder, Alston & Bird, Atlanta, GA, Michael G. Gilman, Jeffrey H. Greger, Lowe, Hauptman Gopstein Gilman & Berner, Alexandria, VA (pro hac vice), for defendants.

Harold Stephen Harris, Jr., Frank Garrett Smith, III, David Michael Maxwell, Scott Austin Elder, Alston & Bird, Atlanta, GA, Michael G. Gilman, Jeffrey H. Greger, Lowe, Hauptman Gopstein Gilman & Berner, Alexandria, VA (pro hac vice), for counter-claimants and third party plaintiffs Craig Sanders, Eico Designs, Inc. and KMB Produce, Inc.

Stephen Robert Risley, J. Scott Culpepper, Jennifer M. Gruber, Thomas Kayden Horstemeyer & Risley, Atlanta, GA, for counter-defendant and third party defendant Maxwell Chase Technologies, Inc.

Dan Robert Gresham, Stephen Robert Risley, J. Scott Culpepper, Jennifer M. Gruber, Thomas Kayden Horstemeyer & Risley, Atlanta, GA, for William M. Brander.

### ORDER

CAMP, District Judge.

This case is before the Court on Defendant Eico Designs, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction [# 7–1], or in the Alternative, to Transfer Venue [# 7–2], Defendant Eico Designs, Inc.'s Motion for Protective Order [# 14–1], Defendants' Motion for Bifurcated Discovery and Trial [# 17–1] and [# 17–2], Plaintiff's Motion for Protective Order [# 26–1], and Defendants' Motion for Protective Orders [# 28–1].

## I. BACKGROUND

Plaintiff Maxwell Chase Technologies, Inc. has brought this action for patent infringement, misappropriation of trade secrets, breach of contract, and tortious interference with business relations arising out of the alleged infringement of its patent for an absorbent container by the corporate Defendants. Specifically, Plaintiff alleges that Defendants KMB Produce, Inc. and Eico Designs, Inc. have engaged in the manufacture, use, and/or sale of "tomato pouches" which constitute direct infringement, contributory infringement, and/or inducement to infringe the claims of Plaintiff's '955 United States patent in violation of 35 U.S.C. § 271.

Defendant Eico Designs Inc. ("Eico") has moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or in the alternative to transfer the action to the United States District Court for the Southern District of Alabama, where Eico contends jurisdiction and venue are proper. Plaintiff opposes the motion. In conjunction with this motion, both Plaintiff and Defendant Eico have moved for protective orders limiting the scope of discovery between them to matters relating to this Court's jurisdiction over Eico pending resolution of Eico's motion to dismiss. In addition, Defendants have moved to bifurcate the discovery and trial of this matter between issues of liability and damages and have moved to stay discovery with respect to damages and willfulness pending a ruling on this issue.

## II. MOTION TO DISMISS

### A. Legal Standard

Defendant Eico contends that it is not subject to personal jurisdiction in Georgia and that Plaintiff's claim against it for patent infringement must be dismissed. Plaintiff bears the burden of establishing jurisdiction in this Court. *Francosteel Corp. v. M/V Charm,* 19 F.3d 624, 626 (11th Cir.1994). Where, as here, an evi-

dentiary hearing is not held on a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a *prima facie* case of jurisdiction to survive a motion to dismiss. *Id.; Allegiant Physicians Serv., Inc. v. Sturdy Memorial Hospital*, 926 F.Supp. 1106, 1112 (N.D.Ga.1996) (Hull, J.). Plaintiff may establish a *prima facie* case by presenting sufficient evidence to withstand a motion for directed verdict. *Id.* The Court construes the allegations in the Complaint as true to the extent that they are uncontroverted by Defendant's evidence. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir.1988). Where there are conflicts between the Parties' evidence, the Court makes all reasonable inferences in favor of Plaintiff. *Id.*

■ In analyzing the issue of personal jurisdiction over a defendant accused of patent infringement, a district court must apply the law of the Federal Circuit rather than that of the regional circuit in which the case arises. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed.Cir.), *cert. denied*, 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir.1994) ("The creation and application of a uniform body of Federal Circuit law in this area would clearly promote judicial efficiency, would be consistent with our mandate [to achieve national uniformity in the field of patent law], and would not create undue conflict and confusion at the district court level."). Despite this requirement, the same basic test utilized in the Eleventh Circuit for determining the existence of personal jurisdiction applies in the Federal Circuit: the Court must conduct a two-part inquiry to determine whether personal jurisdiction exists under Georgia's long arm statute and the Due Process Clause of the United States Constitution. *See Akro*, 45 F.3d at 1544–45; *Beverly Hills Fan*, 21 F.3d at 1564–66; *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir.1996).

■ Where a state's long arm statute confers personal jurisdiction to the limits of Due Process, the Court may pass over

analysis of the statute and exercise jurisdiction where the constitutional requirements are satisfied. *Allegiant Physicians Serv., Inc. v. Sturdy Memorial Hospital*, 926 F.Supp. 1106, 1112 (N.D.Ga.1996) (Hull, J.). Although there has been some disagreement as to whether the Georgia long arm statute extends to the maximum extent of due process for all claims, the Eleventh Circuit has held in recent decisions that the Georgia long arm statute does confer personal jurisdiction to the full extent permitted by the Due Process Clause of the United States Constitution. *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir.1994). Accordingly, the Court will move directly to consideration of whether the exercise of personal jurisdiction over Defendant Eico is consistent with the Due Process Clause.

The Supreme Court stated in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) that "due process requires ... that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (citations omitted). Cases subsequent to *International Shoe* have clarified that these contacts must be purposeful contacts made by the non-resident defendant and not the result of unilateral activity by another. *See e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (purposeful availment of the forum state is the "constitutional touchstone" of the due process analysis). This requirement of purposeful contacts ensures that non-resident defendants have fair warning that a particular activity may subject them to litigation within the forum. *Id.* at 472, 105 S.Ct. 2174.

■ Due Process contemplates two types of jurisdiction over the person and a party may be subject to either general or specific jurisdiction. *Helicopteros Nacio-*

*nales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A party is subject to general jurisdiction when it has "continuous and systematic" contacts with a forum and may be haled into court in that forum on any claim. *Id.*

A non-resident defendant may be subject to specific jurisdiction in a particular forum when (1) it has purposefully established minimum contacts with the forum state and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Francosteel,* 19 F.3d at 627. In order to fulfill the minimum contacts requirement, a plaintiff must demonstrate the presence of three factors. First, the plaintiff's cause of action must arise out of or relate to the non-resident defendant's contacts with the forum state. *Id.* Second, the contacts must show that the non-resident defendant purposefully availed itself of conducting activities within the forum state and invoked the benefits and protections of the forum's laws. *Id.* Third, the defendant's contacts must demonstrate that the non-resident should reasonably anticipate being haled into court in the forum. *Id.* In essence, "[t]he availability of specific jurisdiction depends on the relationship among the defendant, the forum, and the litigation." *Francosteel,* 19 F.3d at 627.

Once it has been established that a non-resident defendant has the requisite minimum contacts with the forum state, the Court must consider these contacts in light of other factors to determine whether the assertion of personal jurisdiction "would comport with fair play and substantial justice." *Burger King v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The other factors to be considered include "the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in

obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental social policies." *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 259 (11th Cir.1996) (citations omitted). Even where a non-resident defendant has sufficient minimum contacts with the forum, these factors may make the assertion of personal jurisdiction unreasonable in a particular case. *Id.* Conversely, these factors may make the assertion of personal jurisdiction reasonable on a lesser showing of minimum contacts. *Id.*

## B. The Parties' Contentions

Defendant Eico contends that it does not have sufficient contacts with the State of Georgia to be subject to general or specific jurisdiction in connection with Plaintiff's claims of patent infringement. Eico concedes that it manufactures the absorbent containers or "tomato pouches" that Plaintiff alleges infringe its '955 patent.[1] Eico argues, however, that it is an Alabama corporation with its principal and only place of business in Mobile, Alabama. Defendant contends that it has never registered to do business in Georgia and that it does not "actively solicit" customers in Georgia through any means. Eico claims that it manufactures all of the absorbent containers at issue in this case in Mobile, Alabama and that it distributes approximately 98% of those containers to the facilities of its co-defendant KMB Produce, Inc. in Texas and Louisiana. Eico has provided evidence that it sells the remainder of its absorbent containers to a single customer in Florida.

Eico concedes that it has delivered one shipment of the accused containers to a Georgia customer, but argues that this shipment was the result of the unilateral solicitation by the Georgia company placing the order after the accrual of the cause of action in this case. Eico argues that this isolated transaction should not weigh into the calculus for purposes of personal

---

1. Of course, Eico maintains that the container  is a non-infringing product.

jurisdiction because the circumstances surrounding the purchase strongly suggest the involvement of Plaintiff and an effort to manufacture jurisdiction in this case. Accordingly, Eico argues that its ties to Georgia fail to give rise to personal jurisdiction for purposes of Plaintiff's claims of patent infringement in connection with its manufacture of absorbent containers. ·

In response to Defendant's motion to dismiss, Plaintiff argues that Defendant Eico's contacts with Georgia are sufficient to support both general and specific jurisdiction in this case. Plaintiff points to a variety of different contacts between Eico and the forum which it contends support personal jurisdiction, including the single sale to a Georgia company of the allegedly infringing absorbent containers. Because the Court finds two of Plaintiff's arguments relating to specific jurisdiction dispositive of Defendant's motion, the Court need not address all of the contacts raised by the Parties. The Court will address each of these arguments relating to specific jurisdiction and the corresponding evidence in turn.

## C. Specific Jurisdiction

### 1. Minimum Contacts

#### a. Stream of Commerce

Plaintiff first argues that Eico has sufficient contacts with the Georgia forum to be subject to specific jurisdiction in this case based upon a "stream of commerce" theory. Plaintiff argues that Eico places its infringing absorbent containers into an established distribution channel terminating in the Georgia forum. Plaintiff offers evidence that Eico has entered into an agreement with co-defendant KMB Produce to supply 100% of its needs with respect to the absorbent containers at issue. Plaintiff has also provided evidence that KMB Produce uses Eico's absorbent containers to fulfill it obligations to provide diced tomatoes to Taco Bell restaurants throughout the Southeastern United States. After Eico ships the containers to KMB Produce in Texas and Louisiana, the containers are filled with diced tomatoes

and sold to Taco Bell restaurants. Plaintiff offers evidence that Defendant Eico was aware that its containers would be used to fulfill KMB's obligations to Taco Bell restaurants, including restaurants in Georgia, even before Eico began manufacturing the containers for KMB. Plaintiff contends that this established distribution channel which sends Defendant Eico's absorbent containers into Georgia supports personal jurisdiction over Eico in this action arising out of patent infringement in connection with the·manufacture, sale, and use of those containers.

Eico does not dispute Plaintiff's factual contentions with respect to the shipment of its containers to KMB Produce and Taco Bell restaurants. Eico argues, however, that the stream of commerce theory does not support jurisdiction in this case because KMB is the "end user" of·its containers, utilizing them merely to package its own product—diced tomatoes—and then selling that product to Taco Bell restaurants in Georgia.

While the regional circuits have not reached a uniform approach with respect to the stream of commerce theory in connection with personal jurisdiction, the Federal Circuit has dealt with the issue at length in the context of patent infringement cases. In *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir.1994), the California plaintiff owned a patent directed to the design of a ceiling fan. The plaintiff sued both the manufacturer and distributor of a competing ceiling fan in the Eastern District of Virginia claiming that the two entities were infringing its patent by selling their fan to customers in the United States, including customers in Virginia. *Id.* at 1560.

The manufacturer of the fans, Ultec, was incorporated in China and manufactured the fans in Taiwan. Ultec's co-defendant, Royal, was a New Jersey corporation that imported the ceiling fans into the United States and distributed them. *Id.* Both defendants moved to dismiss for lack of personal jurisdiction, arguing that their

contacts with the Virginia forum were insufficient to support jurisdiction. Both defendants claimed that they did not have any assets or operations in Virginia and that they had not "directly shipped" the accused fan to distributors or anyone else in Virginia. *Id.*

Plaintiff opposed the motion and provided affidavits from a private investigator, stating that he had purchased one of the defendants' infringing fans at a Virginia retail outlet and that a total of fifty-two of the accused fans were available for sale at the six locations of this retail outlet in Virginia. *Id.* at 1560–61. The affidavit of the private investigator also demonstrated that a manual accompanying the fan identified defendant Royal as the source of the fan and included a warranty which Royal was obligated to honor. *Id.* The district court granted defendants' motion to dismiss finding that defendants' contacts with Virginia were insufficiently purposeful to allow them to reasonably foresee litigation in the forum.

On appeal, the Federal Circuit noted that the plaintiff's complaint alleged that defendants were selling ceiling fans embodying the patented invention to customers in Virginia and other states through intermediaries. While defendants offered evidence that they had not shipped fans *directly* to Virginia, this allegation of the complaint stood unrefuted. *Id.* at 1563. The defendants argued that the plaintiff had offered no evidence that their shipments into Virginia were purposeful or knowing and that the indirect shipment into the forum was insufficient to support jurisdiction. *Id.* at 1564. The court disagreed, however, and found that the evidence that defendants' fans were being sold at the Virginia retailer bearing a warranty from Royal demonstrated an "ongoing, and obviously intentional" commercial relationship between both defendants and the Virginia retailer. The court stated that "[f]rom these ongoing relationships, it can be presumed that the distribution channel formed by defendants and [the Virginia retailer] was intentionally established, and that defendants knew, or reasonably could have foreseen, that a termination point of the channel was Virginia." *Id.* at 1564.

The court recognized that the unilateral actions of a third party having no pre-existing relationship with the tortfeasor in bringing a product into a foreign forum cannot support jurisdiction. The court found, however, that the evidence and allegations in the case demonstrated that the defendants acted together in placing the accused fan into the stream of commerce and that they knew the likely destination of their products and, thus, that their connections with the forum state were such that they should reasonably have anticipated being brought into court there. *Id.* at 1566. The court determined that both defendants were subject to jurisdiction in Virginia and reversed the dismissal by the district court.

■ In the instant case, Defendant Eico does not dispute Plaintiff's evidence that its absorbent containers are filled with tomatoes and sold to Taco Bell restaurants in Georgia. Indeed, Eico's representative, Tom Belina, testified in deposition that he was aware that the containers would be used to sell KMB's produce to Taco Bell restaurants in the Southeast, including Georgia, even before Eico began manufacturing the containers for sale to KMB. Plaintiff has also provided evidence that Eico gave KMB a continuing warranty and guaranty acknowledging that its containers would be shipped in interstate commerce by KMB and warranting that the containers would comply with the Federal Food, Drug and Cosmetic Act as well as other federal, state and local laws. This agreement further provides that Eico will indemnify KMB for all claims and liability sustained by KMB as a result of the breach of this warranty or "as a result of sale by [KMB] or distributors."

As in *Beverly Hills Fan*, this uncontroverted evidence demonstrates concerted action by Eico and KMB to place their products into the stream of commerce directed at Georgia through an established

channel of distribution. Unlike the defendant manufacturer in *Beverly Hills Fan*, Defendant Eico admits that it knew that its containers were destined for shipment and sale to Georgia Taco Bell restaurants. Further, Eico's warranty in connection with the sale of its containers specifically contemplates the placement of its products into the stream of interstate commerce and appears to accept responsibility for claims and damages arising out of KMB's or other distributor's sale of the product. This evidence shows the purposeful and concerted action between Eico and KMB directed at Georgia necessary to support the assertion of jurisdiction over Defendant Eico in this Court. *Beverly Hills Fan*, 21 F.3d at 1566; *see also, Viam Corp. v. Iowa Export–Import Trading Co.*, 84 F.3d 424, 428–29 (Fed.Cir.1996) (finding patentee subject to personal jurisdiction due to its knowing and purposeful exploitation of the California market through the activities of its exclusive distributor); *SGS–Thomson Microelectronics, Inc. v. International Rectifier Corp.*, 31 F.3d 1177, 32 U.S.P.Q.2d 1496, 1499 (Fed.Cir. 1994) (finding seller of allegedly infringing products subject to personal jurisdiction in Texas where seller "entered its products into an unrestricted stream of commerce," expecting its products to be distributed throughout Texas); *Motorola, Inc. v. PC–Tel, Inc.*, 58 F.Supp.2d 349, 355 (D.Del. 1999) (holding that seller of softmodems was subject to jurisdiction in Delaware where the company "acting in concert with its licensees, sells its products expressly for integration into end user products with full knowledge that these goods will then be placed into established distribution channels that service the State of Delaware."); *Worldtronics International, Inc. v. Ever Splendor Enterprise Co.*, 969 F.Supp. 1136, 1141 (N.D.Ill.1997) (finding jurisdiction over Taiwanese manufacturer based on sales to distributors manufacturer knew· shipped the products to the forum).

Eico's argument that the stream of commerce theory does not apply in this case because KMB does not sell "containers" to Taco Bell, but rather sells "tomatoes" which are merely packaged in Eico's containers is unavailing. The evidence submitted to the Court indicates that Eico touts its containers to potential customers based upon the unique ability of the containers to increase the shelf life of its customers' chopped tomatoes and other produce for up to fourteen days. Such representations are inconsistent with an argument that the packaging of KMB's produce is irrelevant to its relationship with Taco Bell or that Eico derives no economic benefit from KMB's sales of tomatoes in its containers to Taco Bell restaurants in Georgia.

More importantly, Eico has pointed to no authority insulating the manufacturer and seller of a component from jurisdiction when its product is integrated with another before being shipped to end users in the forum. Indeed, in *Motorola, Inc. v. PC–Tel, Inc.*, 58 F.Supp.2d 349, 355 (D.Del. 1999), the defendant was the seller of a softmodem which was integrated into large computer systems prior to being sold to end users throughout the country. Despite the defendant's argument that it could not be haled into court in Delaware because it had no control over the destination of the computer systems carrying its modem, the district court found jurisdiction appropriate. The court found that:

> AltoCom's softmodem product is manufactured for integration by another manufacturer into an end user consumable. This product is, in turn, placed into a distribution chain which at its end consists of a variety of retail outlets that sell those products directly to purchasers of electronic goods ... Many, if not all, of these outlets have a national presence. Indeed, AltoCom's softmodems are distributed internationally. In this respect, AltoCom 'acted in consort' with its licensees to place· its softmodems in the stream of commerce.

*Motorola*, 58 F.Supp.2d at 355. Therefore, the court found that the defendant had placed its softmodem into the stream of

commerce through an established distribution channel despite the fact that the soft-modem alone was never resold to any type of consumer in the form originally produced by the defendant. The integration of the product into another "end user consumable" did not alter the reasonable foreseeability of being haled into court in jurisdictions where that "end-user consumable" was sold.

Similarly, the fact that Eico's containers were filled with diced tomatoes before their sale to Taco Bell restaurants within Georgia does not alter the reasonable foreseeability of being required to answer in Georgia for claims arising out of those sales as a result of the concerted activity of KMB and Eico. Based upon the allegations and evidence presented to the Court on Defendant's Motion to Dismiss, Plaintiff has made a prima facie showing that Eico has minimum contacts with Georgia sufficient to support personal jurisdiction on a stream of commerce theory.

### b. Single Sale of Absorbent Containers to Georgia Company

■ Plaintiff also contends that Defendant Eico is subject to personal jurisdiction based upon its one-time sale of its accused absorbent containers directly to a Georgia customer. On March 23, 1999, Tom Gautreaux, General Manager of Dixon Tom–A–Toe, a Georgia company, called Eico to inquire about its absorbent containers and placed an order for 1000 pouches. Eico sent the order to Dixon in Georgia and invoiced the company $275.50. In addition, Mary Huyett, finance manager at Eico, sent Mr. Gautreaux a letter soliciting future sales of the containers to the Georgia based company. Mr. Gautreaux has also testified that he received a call from a Mr. deHemmecourt, who purported to be a sales agent for Eico, soliciting the sale of Eico's absorbent containers to Dixon in the future.

Defendant argues that this sale to a Georgia company should not weigh into the calculation of its contacts with the Georgia forum due to the circumstances surrounding the sale. Specifically, Defendant claims that Mr. Gautreaux is a disgruntled former employee of its co-defendant KMB Produce who has close ties with Maxwell Chase, the plaintiff in this case. Defendant argues that the placement of this single order by an individual connected to Plaintiff shortly before the filing of the Complaint in this case strongly suggests an effort by Plaintiff to manufacture personal jurisdiction over Defendant Eico for purposes of this lawsuit. Thus, Defendant urges the Court to disregard this contact for purposes of determining the existence of personal jurisdiction in this case.

Plaintiff has responded to Defendant's argument with the declaration of Mr. Gautreaux, in which he states that he is responsible for obtaining Dixon's supplies, including the absorbent containers used to package its cut produce, at the best price possible. He contends that he contacted Eico in connection with this responsibility to inquire about the characteristics and price of its containers. Mr. Gautreaux expressly and unequivocally states that the decision to call Eico was his alone and that he "was not prompted to call Eico by Maxwell, Maxwell's counsel, or anyone else." These statements are uncontroverted by Defendant.[2] Even assuming that Defendant has created a factual dispute with respect to this issue, the Court makes all reasonable inferences in favor of Plaintiff where there are conflicts between the Parties' evidence in determining whether a plaintiff has established a *prima facie* case of jurisdiction.

"The law is clear that, where a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal

---

**2.** Indeed, the Court notes that Mr. Gautreaux gave a deposition in connection with the jurisdictional dispute in this case and that Defen-
dant points to no testimony contradicting these representations.

jurisdiction over the defendant." *Osteotech, Inc. v. GenSci Regeneration Sciences, Inc.*, 6 F.Supp.2d 349, 354 (D.N.J.1998) (asserting jurisdiction over alleged infringer based upon single direct sale to a New Jersey customer) (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1570–71 (Fed.Cir.1994) and *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1578–79 (Fed.Cir.1994)). When a defendant sells an allegedly infringing product in a particular forum, the defendant not only has fair warning that it could be haled into court in that forum, but the forum in which the allegedly infringing product is sold has a clear interest in prohibiting the entry of infringing products into its territory. *Id.*

Accepting Plaintiff's evidence regarding the sale to Mr. Gautreaux and Dixon, Defendant Eico's sale of the accused absorbent containers directly to a Georgia customer is sufficient to support personal jurisdiction in this patent infringement case relating to those containers. Although Defendant did not solicit the business initially, Defendant readily availed itself of the opportunity to do business with a Georgia resident, shipped the product to Georgia, and sent a promotional letter to the Georgia resident soliciting further sales in Georgia. Thus, this sale also demonstrates Defendant Eico's contacts with the forum sufficient to support personal jurisdiction in this case. *See Osteotech*, 6 F.Supp.2d at 354 ("it is enough that GenSci Labs sold its product in New Jersey only once, because the product allegedly infringes Osteotech's '588 Patent, which is the subject matter of the instant litigation.").

**2. Fair Play and Substantial Justice**

■ Once it has been established that a non-resident defendant has the requisite minimum contacts with the forum state, the Court must consider these contacts in light of other factors to determine whether the assertion of personal jurisdiction "would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). As noted above, these other factors include the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental social policies.

The Court finds that the assertion of personal jurisdiction over Defendant Eico will comport with fair play and substantial justice. The burden on this Alabama Defendant in being required to defend Plaintiff's claim in the neighboring State of Georgia is slight and the Georgia Plaintiff clearly has an interest in obtaining convenient and effective relief in its home forum. *See e.g., Beverly Hills Fan*, 21 F.3d at 1569 (finding burden on Chinese defendant required to defend claims in Virginia insufficient to defeat jurisdiction). As noted above, the State of Georgia certainly has an interest in adjudicating claims involving the alleged shipment of infringing products into its territory. *Osteotech, Inc. v. GenSci Regeneration Sciences, Inc.*, 6 F.Supp.2d 349, 354 (D.N.J.1998). Finally, the Court notes that it is in the interstate judicial system's interest in obtaining the most efficient resolution of controversies to resolve Plaintiff's claims against Eico and its co-defendants in a single action in this Court. Accordingly, the Court finds that Plaintiff has made out a prima facie case of personal jurisdiction over Defendant Eico and Eico's Motion to Dismiss is **DENIED**.[3] In light of this holding, both Plaintiff's and Defendant's requests for protective orders

---

**3.** Because the Court finds that personal jurisdiction over Defendant Eico is appropriate, venue is also proper in this Court. *See VE Holding Corp. v. Johnson Gas Appliance Co.*,

917 F.2d 1574, 1584 (Fed.Cir.1990), *cert. denied*, 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991).

limiting the scope of discovery between them to matters relating to this Court's jurisdiction over Eico pending resolution of Eico's motion to dismiss are **DENIED AS MOOT.**

### III. BIFURCATION OF DISCOVERY AND TRIAL

All three Defendants have moved for the bifurcation of the discovery process and the trial of this action, arguing that the bifurcation of this complex patent infringement case will promote the streamlined and cost-efficient progress of this action. Specifically, Defendants seek to bifurcate the discovery and trial of "liability" issues from those relating to "willfulness" and "damages."

Plaintiff opposes the motion and contends that bifurcation will not increase efficiency, but will actually serve to prolong the resolution of the litigation unnecessarily because the damages evidence in this action involving a two supplier market will be relatively limited. In addition, Plaintiff argues that it is impossible to segregate issues relating to liability, willful infringement and damages with sufficient precision to allow both Parties a fair and reasonable opportunity to discover and try the instant case.

As both Parties note, decisions relating to the progress of discovery and the bifurcation of trial rest within the sound discretion of the Court. *See National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.,* 748 F.2d 602, 609 (11th Cir.1984); Fed.R.Civ.P. 42(b). The Court notes that the discovery schedule proposed by Defendants would utilize the entire eight month discovery track provided by the Local Rules of this Court for the discovery of liability issues only. This procedure would then require the Court to conduct a trial as to liability only and reopen discovery for some indefinite period of time with respect to damages and willfulness should Plaintiff prevail. The Court finds that this proposed procedure would unnecessarily prolong the resolution of this action.

Furthermore, Plaintiff's argument regarding the difficulty in segregating issues relating to liability, willfulness and damages is well founded. For this reason, the bifurcation of discovery appears likely to lead to an increase in discovery disputes between the Parties and even greater delay in the resolution of the issues before the Court.

For these reasons, Defendants' request for the bifurcation of discovery is **DENIED.** In addition, Defendants' motion to bifurcate the trial of this matter is **DENIED** at this juncture in the proceedings. This holding is without prejudice, however, to Defendants' right to renew their request to bifurcate the trial should this matter proceed to that point. Accordingly, Defendants' motion for a protective order staying discovery on issues of damages and willfulness pending a ruling by the Court with respect to bifurcation is **DENIED AS MOOT.**

### IV. CONCLUSION

Based upon the foregoing, Defendant Eico Designs, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction [# 7–1], or in the Alternative, to Transfer Venue [# 7–2] is **DENIED.** Defendants' Motion for Bifurcated Discovery and Trial, [# 17–1] and [# 17–2], is also **DENIED.** Finally, Defendant Eico Designs, Inc.'s Motion for Protective Order [# 14–1], Plaintiff's Motion for Protective Order [# 26–1], and Defendants' Motion for Protective Orders [# 28–1] are **DENIED AS MOOT.**