**PERIDYNE TECHNOLOGY SOLUTIONS, LLC,**
Plaintiff,

v.

**MATHESON FAST FREIGHT, INC.,** and R.B. Matheson Trucking, Inc., Individually and Doing Business as Matheson, Inc. and Matheson Trucking, Inc.; and James Antoniou, Individually, Defendants.

No. Civ.A.1:00CV1587CAP.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 16, 2000.

M. Taylor Florence, Bullivant Houser Bailey, Gold River, CA, Thomas Bart Gary, Freeman Mathis & Gary, Atlanta, GA, Timothy Harold Kratz, McGuire Woods, Atlanta, GA, Benton J. Mathis, Jr., Freeman Mathis & Gary, Atlanta, GA, for defendants.

Stuart S. Gordan, Robinson, Rappaport Jampol Aussenberg & Schleicher, Alpharetta, GA, Michael Evan Jacobs, Robinson Rappaport Jampol Aussenberg & Schleicher, Alpharetta, GA, Steven Michael Jampol, Robinson Rappaport Jampol Aussenberg & Schleicher, Alpharetta, GA, for plaintiff.

## *ORDER*

PANNELL, District Judge.

The plaintiff brought the instant action, alleging eight (8) claims for relief based upon Federal Computer Fraud, 18 U.S.C. § 1030; Federal RICO, 18 U.S.C. § 1962; Georgia Computer Systems Protection Act, O.C.G.A. § 16–9–90; Georgia RICO, O.C.G.A. § 16–14–3; Georgia Trade Secrets Act of 1990, O.C.G.A. § 10–1–760; breach of contract; quantum meruit, O.C.G.A. § 9–2–7; and Attorney's Fees, O.C.G.A. § 13–6–11. The matter is currently before the court on the defendants' motion to dismiss for lack of jurisdiction, lack of venue, and/or alternatively to transfer venue.

### I. *BACKGROUND FACTS AND PROCEDURAL HISTORY*

The plaintiff is a limited liability company organized and existing under the laws of Nevada with its principal place of business in Atlanta, Georgia. The corporate defendants are organized and exist under the laws of California with their principal places of business in Elk Grove, California. Mr. Antoniou is, and was at all relevant times, domiciled in, and a citizen of, California, and an employee of the corporate defendants (the "individual defendant").

On March 31, 1999, the plaintiff and the corporate defendants entered into a consulting agreement whereby the plaintiff agreed to provide computer consulting services and materials to the corporate defendants (the "Contract"). In connection with

the performance of the Contract, the plaintiff provided several computer consultants to the corporate defendants in California and Georgia. The parties repeatedly used their respective computer systems to interface and exchange information. These interfaces included the plaintiff providing the defendants with password access to limited directories containing certain data and software applications on one of the plaintiff's servers located in Georgia. After the plaintiff demanded payment of its invoiced work, the corporate defendants terminated the plaintiff's services in accordance with the Contract.

Subsequent to this termination, the individual defendant, while in California, acting within the scope of his employment with the corporate defendants, on one or more occasions illegally hacked into several of the plaintiff's servers and directories in Georgia in order to download files, directory listings, proprietary source code, software, CMS_XML technology, financial records and books, research and development, white papers, and personal directories of the plaintiff's employees. Further, he deleted files, cleaned up logs, installed foreign programs, and accessed plaintiff's repository of source code for its commercial clients, located on the plaintiff's main servers in Georgia.

## II. *LEGAL DISCUSSION*

### A. *Personal Jurisdiction*

■ The defendants contend that they are not subject to personal jurisdiction in Georgia and therefore the plaintiff's claim must be dismissed. The plaintiff bears the burden of establishing jurisdiction in this court. *See Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 626 (11th Cir. 1994). Where, as here, an evidentiary hearing is not held on a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a prima facie case of jurisdiction to survive a motion to dismiss, by presenting sufficient evidence to withstand a motion for directed verdict. *See id.* The court construes the allegations in the Complaint as true to the extent that they

are uncontroverted by the defendants' evidence. *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir.1988). Where there are conflicts between the parties' evidence, the court makes all reasonable inferences in favor of the plaintiff. *See id.*

The basic test utilized in the Eleventh Circuit for determining the existence of personal jurisdiction requires the court to conduct a two-part inquiry to determine whether personal jurisdiction exists under Georgia's long-arm statute and the Due Process Clause of the United States Constitution. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir.1996).

■ Where a state's long-arm statute confers personal jurisdiction to the limits of Due Process, the court may pass over analysis of the statute and exercise jurisdiction where the constitutional requirements are satisfied. *See Allegiant Physicians Serv., Inc. v. Sturdy Memorial Hosp.*, 926 F.Supp. 1106, 1112 (N.D.Ga. 1996). Although there has been some disagreement as to whether the Georgia long-arm statute extends to the maximum extent of due process for all claims, numerous district courts in the Eleventh Circuit have held in recent decisions that the Georgia long-arm statute confers personal Jurisdiction to the full extent permitted by the Due Process Clause of the United States Constitution. *See Maxwell Chase Technologies, L.L.C. v. KMB Produce, Inc.*, 79 F.Supp.2d 1364, 1367 (N.D.Ga. 1999) (citing *Francosteel Corp.*, 19 F.3d at 627). Accordingly, the court proceeds directly to the consideration of whether the exercise of personal jurisdiction over the defendants is consistent with the Due Process Clause.

■ "[D]ue [P]rocess requires ... that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v.*

*Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted). Subsequent to *International Shoe,* the Supreme Court has clarified that these "contacts" must be purposeful contacts made by the non-resident defendant and not the result of unilateral activity by another. *See e.g. Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This requirement of purposeful contacts ensures that the non-resident defendant has fair warning that a particular activity may subject her to litigation within the forum. *See Burger King Corp.,* 471 U.S. at 472, 105 S.Ct. 2174, 85 L.Ed.2d 528.

■ Due Process contemplates two types of jurisdiction over the person—general and specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A party is subject to general jurisdiction when it has "continuous and systematic" contacts with the forum state and may be haled into court in the forum state on any claim. *See id.*

■ A non-resident defendant may be subject to specific jurisdiction in a particular forum state when (1) it has purposefully established minimum contacts with the forum state and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *See Francosteel Corp.,* 19 F.3d at 627. In order to fulfill the minimum contacts requirement, the plaintiff must demonstrate the presence of three factors. First, the plaintiff's cause of action must arise out of or relate to the non-resident defendant's contacts with the forum state. *See id.;* *and see Maxwell Chase Technologies, L.L.C.,* 79 F.Supp.2d at 1368. Second, the contacts must show that the non-resident defendant purposefully conducted activities within the forum state and invoked the benefits and protections of the forum's laws. Third, the defendant's contacts must demonstrate that the non-resident should reasonably anticipate being haled into court in the forum. *See id.* Simply, "[t]he availability of specific jurisdiction

depends on the relationship among the defendant, the forum, and the litigation." *Id.*

■ Once the court is satisfied that a non-resident defendant has the requisite minimum contacts with the forum state, then, the court must consider these contacts in light of other factors to determine whether the assertion of personal jurisdiction "would comport with fair play and substantial justice." *Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (quoting *International Shoe Co.,* 326 U.S. at 320, 66 S.Ct. 154, 90 L.Ed. 95). These other factors include "the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental social policies." *Robinson,* 74 F.3d at 259. Even where a non-resident defendant has sufficient contacts with the forum, these factors may make the assertion of personal jurisdiction unreasonable in a particular case. Conversely, these factors may make the assertion of personal jurisdiction reasonable on a lesser showing of minimum contacts. *See id.*

### 1. *General Jurisdiction*

The defendants argue that their sole contract with the plaintiff, standing alone, is insufficient to subject them to general jurisdiction in Georgia, because to do so would offend due process. *See Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414, 104 S.Ct. 1868, 80 L.Ed.2d 404; *Allegiant Physicians Serv., Inc.,* 926 F.Supp. at 1112. The court agrees that coupled with Laurie Johnson's Affidavit and the single contract, the defendants are not subject to general jurisdiction.

### 2. *Specific Jurisdiction*

The defendants also contend that they are not subject to specific jurisdiction in

Georgia, because they have not purposefully established minimum contacts with Georgia. *See Burger King Corp.*, 471 U.S. at 478–79, 105 S.Ct. 2174, 85 L.Ed.2d 528. Relying heavily on *Barnstone v. Congregation Am Echad*, 574 F.2d 286, 288 (5th Cir.1978) (per curiam), the defendants argue the following facts:

1. The plaintiff submitted a proposal to the defendants in California for the Custom System, which was to be developed and constructed for use on the defendants' computer systems in California;

2. The contract negotiations took place in California or telephonically;

3. None of the defendants or their agents traveled to Georgia;

4. The defendants do not haul any freight in Georgia;

5. The proposed contracts were sent from Georgia to California; and

6. Although the plaintiff programmed or designed part of the software project in Georgia, such activity was unilateral performance of the contract that did not involve the defendants.

The plaintiff counters that the defendants purposefully directed their conduct into Georgia in numerous ways, including:

1. Intentionally committing tortious acts within Georgia;

2. Electronically accessing the plaintiff's computer system in Georgia, changing passwords, copying computer files containing proprietary information, and deleting files in an attempt to conceal their illegal entry into the plaintiff's computer system;

3. Negotiating the Contract with the plaintiff, a Georgia based business, which required payment by the defendants in Georgia and contained a forum selection clause requiring jurisdiction and venue in Georgia;

4. Entering into a Consulting Agreement under which most of the development work on the subject software was to be performed in Georgia;

5. Electronically accessing certain authorized and unauthorized areas within the plaintiff's computer system in Georgia and transferring thousands of computer files to and from Georgia;

6. Using the plaintiff's computers for other business purposes unrelated to the performance of the Contract; and

7. Accessing the plaintiff's computers to assist the plaintiff in setting up certain features on the plaintiff's and the corporate defendants' computers.

Thus, the defendants argue that, as non-residents, non-domiciles of, and non-property owners in Georgia, the singular disputed contract, even coupled with the limited electronic and telephonic contact with the plaintiff, without more activity in the forum state, does not create sufficient minimum contacts to support personal jurisdiction. *See Allegiant Physicians Serv., Inc.*, 926 F.Supp. at 1114–19; *and see Harris v. North American Rockwell Corp.*, 372 F.Supp. 958 (N.D.Ga.1974). By contrast, the plaintiff argues that the defendants' activities constitute sufficient minimum contacts with Georgia such that the exercise of personal jurisdiction over them will not offend traditional notions of fair play and substantial justice. *See International Shoe Company*, 326 U.S. at 316, 66 S.Ct. 154; *and see United States Securities and Exchange Commission v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir.1997).

Initially, the court notes that the defendants " 'should not be permitted to take advantage of modern technology' " via the Internet or other electronic means to " 'escape traditional notions of jurisdiction.' " *Cybersell, Inc. v. Cybersell. Inc.*, 130 F.3d 414, 419 (9th Cir.1997) (citations omitted).Turning to the first question of the minimum contacts analysis, the court considers whether the plaintiff's cause of action arises out of or relates to the non-

resident defendants' contacts with the forum state. *See Francosteel Corp.*, 19 F.3d at 627; *and see Maxwell Chase Technologies, L.L.C.*, 79 F.Supp.2d at 1368. The plaintiff's Complaint alleges eight claims for relief based upon numerous activities in California and Georgia, but key to the court's analysis is the allegation in the Complaint of tortious activity in Georgia via the Internet. Coupled with the disputed contract, its forum selection clause, and the defendants' limited, but necessary, business transactions in Georgia, the court finds that the plaintiff's claims arise out of or relate to the defendants' activities, albeit largely electronic, directed at Georgia.

■ Second, the contacts must show that the non-resident defendants purposefully conducted activities within the forum state and invoked the benefits and protections of the forum's laws. Constrained to construe all reasonable inferences in favor of the plaintiff, the court must find that the defendants deliberately directed their electronic activity towards the plaintiff, a Georgia resident, for commercial purposes. The defendants allegedly actively, as opposed to passively, entered the plaintiff's computer system, used pass-codes and authorizations obtained from the plaintiff in the course of their business dealings for the freight tracking software. Further, they allegedly manipulated their way into private files stored on the plaintiff's computers, servers, and databases, based in Georgia. Thus, the court finds that they deliberately directed their activities at Georgia. The individual defendant's contacts, as alleged, constituted repeated transfers of thousands of computer files from the plaintiff's computers in Georgia to the defendants' computers in California. Whether his activity in Georgia was once, as argued, or repeated is of no consequence. The court finds that his activities, as alleged, rise to the level of a substantial connection with Georgia. *See Burger King Corp.*, 471 U.S. at 475 n. 18, 105 S.Ct. 2174, 85 L.Ed.2d 528.

■ Third, and finally, the defendants' contacts must demonstrate that as non-residents, they should reasonably anticipate being haled into court in the forum. *See Francosteel Corp.*, 19 F.3d at 627. That the defendants never physically entered Georgia is of no import to the instant question of jurisdiction under these facts. *See Burger King Corp.*, 471 U.S. at 476, 105 S.Ct. 2174, 85 L.Ed.2d 528; *and see Vermeulen v. Renault, U.S.A., Inc.*, 965 F.2d 1014, 1025 (11th Cir.1992). The plaintiff alleges that the defendants injured them by committing tortious activity in Georgia and entering a contract, albeit a disputed one, which provided a Georgia forum selection clause. The defendants were or should have been aware that conducting business transactions with the plaintiff in Georgia, even electronically, entering a contract, coupled with allegedly tortious activity, even through the Internet, would have consequences in Georgia. No element of surprise exists for the defendants in being sued in Georgia.

Thus, having carefully considered the parties' briefs, the court is satisfied that the "quantity, quality and nature of the defendant[s'] contacts with the [instant] jurisdiction are substantial." *B & J Mfg. v. Solar Indus.*, 483 F.2d 594, 598–599 (8th Cir.1973). Accordingly, the court finds that the defendants purposefully directed their activities at residents of Georgia and that the instant litigation results from and/or is sufficiently related to those activities for this court to have personal jurisdiction over them. *See Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. 2174, 85 L.Ed.2d 528.

### 3. Fair Play and Substantial Justice

■ Having decided that the defendants purposefully established minimum contacts within Georgia, the court next considers whether the assertion of jurisdiction over the defendants based upon those contacts comports with "fair play and substantial justice." *Id.* at 476–77, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528. In doing so, the court must satisfy itself that the defendants have not presented a com-

pelling case that jurisdiction would be constitutionally unreasonable.

■■■ The burden on the defendants in being required to defend this action in Georgia is minimal in light of modern transit systems and, the plaintiff has a strong interest in obtaining convenient and effective relief in its home forum. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1569 (Fed.Cir.1994). While the court is not unmindful of the burden on the individual defendant in litigating this matter in Georgia, modern means of communication allow him to litigate in Georgia while remaining for the majority of the time in California. *See Robinson*, 74 F.3d at 259. Furthermore, Georgia "has a 'manifest interest' in providing its residents with a convenient forum for redressing [tortious] injuries inflicted by out-of-state actors," which is not outweighed by the individual defendant's inconvenience. *Burger King Corp.*, 471 U.S. at 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (internal citations omitted). Specifically, Georgia has a strong interest in protecting Georgia corporations, like the plaintiff, from the illegal attempts of non-residents to misappropriate computer data, technology, trade secrets, and confidential information. *See Urspruch v. Greenblum*, 968 F.Supp. 707, 712 (S.D.Ga.1996). Thus, having considered the burden on the defendants in defending the lawsuit, Georgia's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, the court finds that the assertion of personal jurisdiction over the defendants comports with fair play and substantial justice. Accordingly, the defendants' motion to dismiss for lack of personal jurisdiction is denied.

### B. *Improper Venue*

#### 1. *Motion to Dismiss*

■■■ The defendants also move the court to dismiss or alternatively to transfer this case to the United States District Court for the Eastern District of California pursuant to the provisions of 28 U.S.C. §§ 1404(a) and 1406(a). With respect to the corporate defendants contention that venue cannot be demonstrated under 28 U.S.C. § 1391(b), the court notes that the plaintiff alleges that the individual defendant, at the direction of the corporate defendants, illegally accessed the plaintiff's computer systems in Georgia. The fact that the defendants used computers and telephones to enter Georgia does not make venue in Georgia improper. Rather, the court finds that a substantial part of the events in this case occurred in Georgia and so venue is proper in this court under Section 1391(b).

#### 2. *Motion to Transfer*

■■■ Although jurisdiction exists in this forum, Section 1404(a) permits the transfer of a case for the convenience of the parties and witnesses, and in the interests of justice. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). In deciding whether the requested transfer should be granted, the court must strike a balance between those elements which weigh in favor of transferring and those which favor allowing the plaintiff's choice of forum to stand undisturbed. The court will not grant a transfer if it would merely shift inconvenience from one party to the other.

To meet the requirements of Section 1404(a), the movants, here the defendants, bear the burden of proving that the proposed transferee district, the Eastern District of California, is a district in which the claims in this case could have been brought originally and that the balance of interests weighs strongly in favor of the proposed transfer district. *See In re Ricoh Corp.*, 870 F.2d 570 (11th Cir.1989).

■■■ The defendants appear to meet the first requirement. Since the instant claims are founded on diversity of citizenship and federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332, the claims are properly brought in any judicial district where all the defendants reside or

where the claim arose. The defendants are incorporated and/or reside in California. The disputes are governed by federal and state law, and the events giving rise to this action took place in Georgia and California. Accordingly, the court finds that venue is proper in either Georgia or California.

With regard to the second requirement, that the balance of interests must weigh strongly in favor of the proposed transferee district, the defendants asserts the following factors as being determinative of their respective motions to transfer:

1. California is a more convenient forum than Georgia;

2. It will be time consuming and expensive to require the individual defendant and numerous California-domiciled witnesses to travel to Georgia to testify as witnesses;

3. It would be disruptive to the individual defendant's home-life to travel to Georgia;

4. The corporate defendants are both California corporations with their principal places of business there;

5. The plaintiff's employees traveled to California—the corporate defendants' employees did not travel to Georgia;

6. Even if the court applies Georgia law to the disputed contract, California law would apply to several of the other claims; and

7. The center of gravity test under Section 1404(a) dictates that venue is proper in California.

In response, the plaintiff asserts the following factors in its opposition to the defendant's motion to transfer:

1. California is not more convenient than Georgia;

2. Any inconvenience suffered by the defendants in traveling to Georgia would be no greater than the inconvenience to the plaintiff in traveling to California;

3. The defendants would only have to be in Georgia for the trial;

4. Many of the witnesses in this case are in Georgia; and

5. Most of the "evidence" is in Georgia.

Both parties will undoubtedly be inconvenienced if they were required to travel to a forum other than where they reside. Despite their arguments to the contrary, the court finds that the defendants will not be much more substantially burdened with respect to transporting relevant physical and documentary evidence, and producing witnesses, than the plaintiff. Again, the court will not simply shift burdens. Furthermore, the plaintiff has demonstrated that it and many of its potential witnesses, which are in Georgia, would be significantly inconvenienced if required to travel to California.

Although the defendants' arguments as to financial and physical hardship are factors in considering the convenience of the parties, the interests of all the parties weighs in favor of not transferring the case. The individual defendant may not be a corporation on par with the plaintiff, however, the court is unconvinced that the defendant would be severely harmed by resolving this case in Georgia.

In addition to weighing considerations of the parties' and witnesses' convenience, the court must weigh the considerations of cost, judicial economy, expeditious discovery and trial process. *See Gulf Oil Corp.,* 330 U.S. at 501, 67 S.Ct. 839, 91 L.Ed. 1055. As for the interests of justice, the court looks at the same factors that have been traditionally applied in the doctrine of forum non conveniens. *See Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955). Although the court may exercise much discretion in this area, the Supreme Court has outlined several criteria for lower courts to consider including access to evidence, availability of witnesses, the cost of obtaining witnesses, and all other practical problems that make the trial of a case easy, expeditious and inexpensive. *See id.* The court recognizes that unless the balance of interests strongly favors the defendants, the plaintiff's

choice of forum should rarely be disturbed. *See id.* This factor, coupled with the interests of judicial economy, cost, and expeditious litigation tip the balance of interests in the plaintiff's favor. Accordingly, the court, having given due consideration to all the factors presented by the parties, concludes that the motion to dismiss and/or transfer this cause of action is improper.

### III. *CONCLUSION*

For the foregoing reasons, the court hereby DENIES Mr. Antoniou's motion to dismiss for lack of personal jurisdiction [Doc. No. 6–1] and his motion to dismiss for improper venue or to transfer venue [Doc. No. 6–2], and DENIES the Matheson defendants' motion to dismiss for lack of personal jurisdiction [Doc. No. 7–1] and their motion to dismiss for improper venue or to transfer venue [Doc. No. 7–2], and DENIES the plaintiff's motion for oral argument [Doc. No. 13–1].